UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEAN BATTY; D. SCOTT BATTY, JR., MD; MARY LEARNING; KEN TRUDELL; MATT WOLF; PAUL BARNETT; and COMMON-WEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> KEN ALBERTELLI, in his official Capacity as Chief of the Winchester Police Department; RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; and WILLIAM TAYLOR, in his Official Capacity as Superintendent of the Lowell Police Department, <br><br> Defendants. |  <br><br><br><br><br><br><br><br><br><br><br><br> PRELIMINARY EQUITABLE <br> RELIEF REQUESTED |

## COMPLAINT

Plaintiffs JEAN BATTY; D. SCOTT BATTY, JR., MD; MARY LEARNING; KEN TRUDELL; MATT WOLF; PAUL BARNETT; and COMMONWEALTH SECOND AMENDMENT, INC., as and for their Complaint against Defendants KEN ALBERTELLI; RICHARD C. GRIMES; and WILLIAM TAYLOR, allege as follows:

1. This suit challenges Defendants' imposition of "sporting," "target," and/or "hunting" restrictions on handgun licenses. These restrictions prevent Plaintiffs from using handguns for the purpose self-protection, which contravenes "the right of the people to keep and bear arms" that the Second Amendment secures.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The Eastern Division is appropriate pursuant to LR 40.1(D)(1)(b) because all of the parties reside in the District and a majority reside in the Eastern Division.

## PARTIES

1. Plaintiff Jean Batty is a citizen and resident of Massachusetts residing in the Town of Scituate, Plymouth County.

2. Plaintiff D. Scott Batty, Jr., MD is a citizen and resident of Massachusetts residing in the Town of Scituate, Plymouth County.

3. Plaintiff Mary Learning is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

4. Plaintiff Ken Trudell is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

5. Plaintiff Matt Wolf is a citizen and resident of Massachusetts residing in the City of Lowell, Middlesex County.

6. Plaintiff Paul Barnett is a citizen and resident of Massachusetts residing in the City of Lowell, Middlesex County.

7. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

8. Defendant Ken Albertelli ("Chief Albertelli") is sued in his official capacity as Chief of the Winchester Police Department (Middlesex County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131. As detailed herein, Defendant Chief Albertelli has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

9. Defendant Richard C. Grimes ("Chief Grimes") is sued in his official capacity as Chief of the Weymouth Police Department (Norfolk County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131. As detailed herein, Defendant Chief Grimes has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

10. Defendant William Taylor ("Chief Taylor") is sued in his official capacity as Superintendent of the Lowell Police Department (Middlesex County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131. As detailed herein, Defendant Chief Taylor has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

## CONSTITUTIONAL PROVISIONS

11. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

12. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008).

13. The Second Amendment guarantees individuals a fundamental right to carry operable handguns in non-sensitive public places for the purpose of self-defense.

14. The Second Amendment "is fully applicable against the States." McDonald v. Chicago, 561 U.S. 742, 750 (2010).

15. The States retain the ability to regulate the manner of carrying handguns within constitutional parameters; to prohibit the carry of handguns in specific, narrowly defined sensitive places; to prohibit carrying arms that are not within the scope of Second Amendment protection; and, to disqualify specific, particularly dangerous individuals from possessing guns. However, States may not deny law-abiding citizens the right to carry handguns for protection.

16. The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Under the Equal Protection Clause, "classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988).

## **MASSACHUSETTS HANDGUN LICENSING LAWS**

17. It is unlawful to possess, use, or carry a handgun unless one holds a License to Carry Firearms ("LTC") issued pursuant to M.G.L. c. 140, § 131. See M.G.L. c. 269, § 10(a); M.G.L. c. 140, §§ 129B-129C.

18. Under M.G.L. c. 140, §§ 121, 131(d) Massachusetts residents apply for LTC's from a designated "licensing authority," which is the head law enforcement officer of the locality in which an individual resides or has a place of business.

19. A person seeking an LTC must meet specified requirements related to, *inter alia*, age, criminal background, and mental fitness. See M.G.L. c. 140, § 131(d)(i)-(x). Furthermore, licensing authorities can deny LTC's to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." See id. Finally, a person must also complete state mandated training. See id. at § 131P. This case does not concern any of these requirements.

20. Rather, this case concerns these Defendants' applications of the independent statutory power to issue LTC's "subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper." M.G.L. c. 140, § 131(a); see also M.G.L. c. 140, § 131(b).

21. A local official's decision to impose such restrictions on an individual's LTC will be upheld so long as it is not arbitrary, capricious, or an abuse of discretion. See, e.g., Ruggiero v. Police Comm'r of Boston, 18 Mass. App. 256, 259, 464 N.E.2d 104, 107 (1984).

22. Carrying, using, or possessing a handgun in violation of the restrictions placed on an LTC is grounds for suspension or revocation of the LTC and a fine of $1,000 to $10,000. See M.G.L. c. 140, § 131(a); see also M.G.L. c. 140, § 131(b).

23. Most Massachusetts localities do not normally place restrictions on LTC's, and the majority of LTC's in force are unrestricted. However, a minority of Massachusetts localities have policies, customs, or practices of generally or presumptively issuing LTC's subject to "sporting," "target," and/or "hunting" restrictions, and some other Massachusetts localities apply more *ad hoc* policies, customs, or practices under which some applicants receive unrestricted LTC's, and others receive restrictions, but without any apparent difference in circumstances.

24. Massachusetts' LTC scheme results in otherwise-qualified, law-abiding citizens of Massachusetts being denied the right to carry a firearm for self-defense, while other, similarly situated residents of Massachusetts are permitted to exercise their right to bear arms to protect themselves. For example, neighboring localities may adopt different policies regarding unrestricted LTC's, resulting in a citizen's right to bear arms being dependent on whether he lives in one locality or the other. One citizen may be denied the right to carry a firearm for self-defense because local licensing officials refuse to issue unrestricted LTC's, while an otherwise

indistinguishable neighbor may be able to obtain an unrestricted LTC if he happens to have a place of business in a locality that does issue unrestricted licenses. A person may obtain an unrestricted LTC and then, without any apparent cause, lose it or be unable to renew it. These examples are not fanciful; on information and belief, they all describe scenarios that have taken place under Massachusetts' LTC scheme and, indeed, some of these irrational and arbitrary results have been experienced by the Plaintiffs themselves.

### DEFENDANTS' APPLICATION OF THE STATUTE AGAINST THE PLAINTIFFS

### CHIEF ALBERTELLI AND THE WINCHESTER POLICE DEPARTMENT

25.   Plaintiff Jean Batty previously lived in Winchester, Massachusetts. Mrs. Batty is (and at all material times was) married to Plaintiff D. Scott Batty, Jr., MD.

26.   Plaintiff D. Scott Batty, Jr., MD is the husband of Mrs. Batty, and he also previously lived in Winchester, Massachusetts.

27.   In March 2013 both Dr. Batty and Mrs. Batty applied for LTC's from Chief Albertelli of the Winchester Police Department in Winchester, Massachusetts. Both Dr. Batty and Mrs. Batty met all applicable requirements for issuance of LTC's. Both Dr. Batty and Mrs. Batty completed application forms on which they requested that their LTC's be issued for "all lawful purposes."

28.   When Dr. Batty and Mrs. Batty submitted their applications, an officer reviewed the forms and interviewed them. The officer told them that "all lawful purposes" was not sufficiently specific. Both Dr. Batty and Mrs. Batty then changed their forms to request licenses for "personal protection and defense" (or something substantially similar). During the interview, both Dr. Batty and Mrs. Batty told the officer that they sought to be able to use and carry a gun to protect themselves and their families.

29. On June 5, 2013 Chief Albertelli issued both Dr. Batty and Mrs. Batty LTC's that did not carry restrictions.

30. Dr. Batty and Mrs. Batty later moved to their current residence in Scituate.

31. In January 2015 a representative of Chief Albertelli (Barbara Bosco) contacted Dr. Batty and Mrs. Batty and advised them that their LTC's had been "issued without the approved Target and Hunting Restriction as originally directed by the Chief of Police." The letters directed Dr. Batty and Mrs. Batty to return their LTC's in favor of restricted LTC's.

32. Dr. Batty submitted a letter to Chief Albertelli requesting that he reconsider and reissue his LTC without restrictions. In this letter, Dr. Batty provided details regarding his employment, travel, and family, and he also provided details regarding his Pennsylvania license to carry and his background in the military. Ms. Bosco subsequently advised Dr. Batty that Chief Albertelli would not issue the LTC without restrictions.

33. On January 26, 2015 Dr. Batty and Mrs. Batty turned in their LTC's to the Winchester Police Department in exchange for LTC's that carry "Target & Hunting" restrictions.

### CHIEF GRIMES AND THE WEYMOUTH POLICE DEPARTMENT

34. Plaintiff Mary Learning applied for an LTC from Chief Grimes in 2013. Ms. Learning met all applicable requirements for issuance of an LTC. On her application, Ms. Learning requested that her LTC be issued "for lawful purposes only."

35. On October 9, 2013 Chief Grimes issued Ms. Learning a "Class A" LTC carrying the restriction of "Target & Hunting."

36. Plaintiff Ken Trudell applied for an LTC from Chief Grimes in 2013. Mr. Trudell met all applicable requirements for issuance of an LTC. On his application, Mr. Trudell requested that his LTC be issued "for all lawful purposes."

37. At the time he submitted his application, Mr. Trudell specifically requested that Chief Grimes issue him an LTC that did not carry restrictions. Officer Chase, who accepted Mr. Trudell's application, stated that the town's policy was to only issue unrestricted licenses to businesses owners and individuals required to carry guns in the course of their employment.

38. On October 17, 2013 Chief Grimes issued Mr. Trudell a "Class A" LTC carrying the restriction of "Target & Hunting."

### CHIEF TAYLOR AND THE LOWELL POLICE DEPARTMENT

39. In November 2014 Plaintiff Matt Wolf applied for an LTC from Chief Taylor of the Lowell Police Department in Lowell, Massachusetts. Mr. Wolf met all applicable requirements for issuance of an LTC. Mr. Wolf completed an application on which he requested that his LTC be issued for "all lawful purposes."

40. Mr. Wolf submitted his application by making an appointment with a female police officer, believed to be Detective Karen Witts. This officer did not review the application that Mr. Wolf had filled out, but instead, she interviewed Mr. Wolf and typed his information into a computer. Mr. Wolf stated that he wanted an unrestricted LTC for all lawful purposes, and the officer told him that the Police Department would not issue him an unrestricted license. The officer told Mr. Wolf that they only issued unrestricted licenses to law enforcement officers, owners of businesses who carried cash, and victims of violent crimes.

41. On December 8, 2014 Chief Taylor issued Mr. Wolf an LTC with the restriction of "Sporting."

42. Plaintiff Paul Barrett previously lived in Middleboro, Massachusetts, where he had applied for and obtained an LTC that was unrestricted. Mr. Barrett thereafter moved to Lowell. His Middleboro LTC had an expiration date of May 6, 2014.

43. On April 17, 2014 Mr. Barrett applied to renew his LTC with Chief Taylor. Mr. Barrett met all applicable requirements for issuance or renewal of an LTC. On his application, Mr. Barrett requested that his LTC be issued for "all lawful purposes."

44. At the time that Mr. Barrett submitted his application, Detective Witts, who accepted the application, told him that the Police Department would not issue him an unrestricted license, but that the license would be subject to a restriction. Detective Witts stated that the Department only issued licenses to victims of violent crimes and individuals who owned "high risk" cash businesses such as gas stations.

45. Soon thereafter, and with an effective date of May 6, 2014, Chief Taylor issued Mr. Barrett a "Class A" LTC with the restriction of "Sporting."

## **INJURY TO THE PLAINTIFFS**

46. The restriction of the above individual Plaintiffs' LTC's to "sporting," "target," and/or "hunting" purposes precludes these Plaintiffs from possessing, using, or carrying handguns for the purpose of self-protection. But for these Plaintiffs' fear that their LTC's would be suspended or revoked and/or that they would be fined, each of these Plaintiffs would possess, use, and carry a handgun for the purpose of self-protection.

47. Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms. Comm2A brings this action on its own behalf and on behalf of its members.

48. Plaintiff Comm2A has members and supporters throughout (and beyond) Massachusetts, including members and supporters who hold LTC's that the Winchester, Weymouth, and Lowell Police Departments issued with "sporting," "target," and/or "hunting" restrictions. These and other members and supporters of Comm2A would carry possess, use, and

carry a handgun for the purpose of self-protection, but they refrain from doing so out of the fear that their LTC's would be suspended or revoked and/or that they would be fined.

49. In addition, Comm2A expends significant resources assisting people who receive restricted LTC's under the authority of M.G.L. c. 140, § 131, including specifically people receiving restricted licenses from the Winchester, Weymouth, and Lowell Police Departments. Both members and supporters of Comm2A and members of the general public have contacted Comm2A as a result of the restriction of their LTC's. Comm2A would not expend its organizational resources to respond to these demands if Defendants did not impose restrictions in the first instance. Comm2A would instead use its organizational resources to pursue other organizational priorities.

50. All of the Plaintiffs' injuries are irreparable because people are entitled to enjoy their constitutional rights in fact.

## COUNT I

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

51. Massachusetts' LTC licensing scheme, and in particular M.G.L. c. 140, § 131(a) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

52. Defendants have exercised this authority by issuing Plaintiffs LTC's that prohibit them from carrying and using handguns for the purpose of self-defense and have thereby deprived Plaintiffs of their right to keep and bear arms.

53. Defendants have further exercised this authority by adopting policies, customs, and/or practices of issuing LTC's with "sporting," "target," and/or "hunting" restrictions that prohibit carrying or using handguns for the purpose of self-defense.

54.     Defendants have thereby infringed Plaintiffs' rights under the Second Amendment and the Due Process Clause of the Fourteenth Amendment, and Defendants have damaged Plaintiffs in violation of 42 U.S.C. § 1983.

## COUNT II

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

55.     Massachusetts' LTC licensing scheme, and in particular M.G.L. c. 140, § 131(a) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

56.     Defendants have exercised this authority such that the ability of law-abiding citizens of Massachusetts to exercise their fundamental right to bear arms often turns on arbitrary considerations, such as whether an individual resides on the correct side of a local boundary line, has a lot of cash, has a place of business in another locality that issues unrestricted LTC's, or has held an LTC for some period of time.

57.     The aforesaid statute, and Defendants' implementation of this statute, violates Plaintiffs' Second Amendment right to keep and bear arms and their Fourteenth Amendment rights to due process and equal protection of the laws, and damages Plaintiffs in violation of 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i.   declaratory judgment that M.G.L. c. 140, § 131(a) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

ii.  declaratory judgment that Defendants' policies, customs, and/or practices implementing M.G.L. c. 140, § 131(a) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified

|      | |
| ---- | --- |
|      | private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes; |
| iii. | declaratory judgment that M.G.L. c. 140, § 131(a) & (d) violate the Equal Protection Clause to the extent they allow similarly situated, law-abiding citizens to be treated differently for purposes of exercising their fundamental right to carry a loaded and operable handgun for self-protection, in a manner not sufficiently tailored to a sufficiently important government interest; |
| iv.  | injunctive relief directing Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, to issue to Plaintiffs Jean Batty; D. Scott Batty; Mary Learning; Ken Trudell; Matt Wolf; and Paul Barnett; LTC's that do not carry "sporting," "target," or "hunting" restrictions, nor any other similar restrictions that would preclude the carry and use of handguns for self-protection; |
| v.   | injunctive relief precluding Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who receive notice of the injunction, from issuing LTC's with "sporting," "target," or "hunting" restrictions, or with any other similar restriction that would preclude the use of handguns for self-protection; |
| vi.  | such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and |
| vii. | attorney's fees and costs pursuant to 42 U.S.C. § 1988. |

Dated: January 30, 2015

        Respectfully submitted,

        THE PLAINTIFFS,

        By their attorneys,


        <u>/s/ Patrick M. Groulx</u>
        Patrick M. Groulx, Esq.
        BBO No. 673394
        Grolman, LLP
        321 Columbus Avenue
        Boston, Massachusetts 02116
        Tel: 617.859.8966
        Fax: 617.859.8903
        patrick@grollmanllp.com

        David D. Jensen, Esq.
        DAVID JENSEN PLLC
        111 John Street, Suite 420
        New York, New York 10038
        Tel: 212.380.6615
        Fax: 917.591.1318
        david@djensenpllc.com
        Motion for Admission *Pro Hac Vice* Forthcoming