UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEAN BATTY; EDWARD RUSSO; MARY LEARNING; KEN TRUDELL; MATT WOLF; PAUL P. BARNETT; CRAIG VACCA; DAVID GOLDMAN; JANELE GOLDMAN; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> KEN ALBERTELLI, in his official Capacity as Chief of the Winchester Police Department; RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; WILLIAM TAYLOR, in his Official Capacity as Superintendent of the Lowell Police Department; and DAVID A. PROVENCHER, in his Official Capacity as Chief of the New Bedford Police Department, <br><br> xDefendants. | CIVIL ACTION NO. 1:15-cv-10238 <br><br><br><br><br><br><br><br><br><br><br> PRELIMINARY EQUITABLE RELIEF REQUESTED |

## AMENDED COMPLAINT

Plaintiffs JEAN BATTY; EDWARD RUSSO; MARY LEARNING; KEN TRUDELL;
MATT WOLF; PAUL P. BARNETT; CRAIG VACCA; DAVID GOLDMAN; JANELE
GOLDMAN; and COMMONWEALTH SECOND AMENDMENT, INC., as and for their
Complaint against Defendants KEN ALBERTELLI; RICHARD C. GRIMES; WILLIAM
TAYLOR; and DAVID A. PROVENCHER, allege as follows:

1.      This suit challenges Defendants' imposition of "sporting," "target," and/or
"hunting" restrictions on handgun licenses.  These restrictions prevent Plaintiffs from using

handguns for the purpose self-protection, which contravenes "the right of the people to keep and bear arms" that the Second Amendment secures.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3.      This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

4.      Venue is proper pursuant to 28 U.S.C. § 1391.

5.      The Eastern Division is appropriate pursuant to LR 40.1(D)(1)(a) because all of the parties reside in the Eastern Division.

**PARTIES**

1.      Plaintiff Jean Batty is a citizen and resident of Massachusetts residing in the Town of Scituate, Plymouth County.

2.      Plaintiff Edward Russo is a citizen and resident of Massachusetts residing in the Town of Winchester, Middlesex County.

3.      Plaintiff Mary Learning is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

4.      Plaintiff Ken Trudell is a citizen and resident of Massachusetts residing in the Town of Weymouth, Norfolk County.

5.      Plaintiff Matt Wolf is a citizen and resident of Massachusetts residing in the City of Lowell, Middlesex County.

6.      Plaintiff Paul P. Barnett is a citizen and resident of Massachusetts residing in the City of Lowell, Middlesex County.

7.      Plaintiff Craig Vacca is a citizen and resident of Massachusetts residing in the City of Lowell, Middlesex County.

8.      Plaintiff David Goldman is a citizen and resident of Massachusetts residing in the City of New Bedford, Bristol County.

9.      Plaintiff Janele Goldman is a citizen and resident of Massachusetts residing in the City of New Bedford, Bristol County.

10.     Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

11.     Defendant Ken Albertelli ("Chief Albertelli") is sued in his official capacity as Chief of the Winchester Police Department (Middlesex County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131.  As detailed herein, Defendant Chief Albertelli has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

12.     Defendant Richard C. Grimes ("Chief Grimes") is sued in his official capacity as Chief of the Weymouth Police Department (Norfolk County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131.  As detailed herein, Defendant Chief Grimes has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

13.     Defendant William Taylor ("Chief Taylor") is sued in his official capacity as Superintendent of the Lowell Police Department (Middlesex County), responsible for issuing

handgun licenses pursuant to M.G.L. c. 140, § 131.  As detailed herein, Defendant Chief Taylor

has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact

presently enforcing the challenged policies, customs, and practices against Plaintiffs.

14.     Defendant David A. Provencher ("Chief Provencher") is sued in his official

capacity as Chief of the New Bedford Police Department (Bristol County), responsible for

issuing handgun licenses pursuant to M.G.L. c. 140, § 131.  As detailed herein, Defendant Chief

Provencher has enforced the challenged policies, customs, and practices against Plaintiffs and is

in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

<u>**Constitutional Provisions**</u>

15.     The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the
> right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

16.     The Second Amendment "guarantee[s] the individual right to possess and carry

weapons in case of confrontation."  <u>District of Columbia v. Heller</u>, 554 U.S. 570, 592 (2008).

17.     The Second Amendment guarantees individuals a fundamental right to carry

operable handguns in non-sensitive public places for the purpose of self-defense.

18.     The Second Amendment "is fully applicable against the States."  <u>McDonald v.

Chicago</u>, 561 U.S. 742, 750 (2010).

19.     The States retain the ability to regulate the manner of carrying handguns within

constitutional parameters; to prohibit the carry of handguns in specific, narrowly defined

sensitive places; to prohibit carrying arms that are not within the scope of Second Amendment

protection; and, to disqualify specific, particularly dangerous individuals from possessing guns.

However, States may not deny law-abiding citizens the right to carry handguns for protection.

20.     The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws."  Under the Equal Protection Clause, "classifications affecting fundamental rights are given the most exacting scrutiny."  Clark v. Jeter, 486 U.S. 456, 461 (1988).

## MASSACHUSETTS HANDGUN LICENSING LAWS

21.     It is unlawful to possess, use, or carry a handgun unless one holds a License to Carry Firearms ("LTC") issued pursuant to M.G.L. c. 140, § 131.  See M.G.L. c. 269, § 10(a); M.G.L. c. 140, §§ 129B-129C.

22.     Under M.G.L. c. 140, §§ 121, 131(d) Massachusetts residents apply for LTC's from a designated "licensing authority," which is the head law enforcement officer of the locality in which an individual resides or has a place of business.

23.     A person seeking an LTC must meet specified requirements related to, *inter alia*, age, criminal background, and mental fitness.  See M.G.L. c. 140, § 131(d)(i)-(x).  Furthermore, licensing authorities can deny LTC's to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety."  See id.  Finally, a person must also complete state mandated training.  See id. at § 131P.  This case does not concern any of these requirements.

24.     Rather, this case concerns these Defendants' applications of the independent statutory power to issue LTC's "subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper."  M.G.L. c. 140, § 131(a).

25.     A local official's decision to impose such restrictions on an individual's LTC will be upheld so long as it is not arbitrary, capricious, or an abuse of discretion.  See, e.g., Ruggiero v. Police Comm'r of Boston, 18 Mass. App. 256, 259, 464 N.E.2d 104, 107 (1984).

26.     Carrying, using, or possessing a handgun in violation of the restrictions placed on an LTC is grounds for suspension or revocation of the LTC and a fine of $1,000 to $10,000.  <u>See</u> M.G.L. c. 140, § 131(a).

27.     Most Massachusetts localities do not normally place restrictions on LTC's, and the majority of LTC's in force are unrestricted.  However, a minority of Massachusetts localities have policies, customs, or practices of generally or presumptively issuing LTC's subject to "sporting," "target," and/or "hunting" restrictions, and some other Massachusetts localities apply more *ad hoc* policies, customs, or practices under which some applicants receive unrestricted LTC's, and others receive restrictions, but without any apparent difference in circumstances.

28.     Massachusetts' LTC scheme results in otherwise-qualified, law-abiding citizens of Massachusetts being denied the right to carry a firearm for self-defense, while other, similarly situated residents of Massachusetts are permitted to exercise their right to bear arms to protect themselves.  For example, neighboring localities may adopt different policies regarding unrestricted LTC's, resulting in a citizen's right to bear arms being dependent on whether he lives in one locality or the other.  One citizen may be denied the right to carry a firearm for self-defense because local licensing officials refuse to issue unrestricted LTC's, while an otherwise indistinguishable neighbor may be able to obtain an unrestricted LTC if he happens to have a place of business in a locality that does issue unrestricted licenses.  A person may obtain an unrestricted LTC and then, without any apparent cause, lose it or be unable to renew it.  These examples are not fanciful; on information and belief, they all describe scenarios that have taken place under Massachusetts' LTC scheme and, indeed, some of these irrational and arbitrary results have been experienced by the Plaintiffs themselves.

**DEFENDANTS' APPLICATION OF THE STATUTE AGAINST THE PLAINTIFFS**

**CHIEF ALBERTELLI AND THE WINCHESTER POLICE DEPARTMENT**

29.     Plaintiff Jean Batty previously lived in Winchester, Massachusetts.

30.     In March 2013 Mrs. Batty applied for an LTC from Chief Albertelli of the Winchester Police Department.  Mrs. Batty met all applicable requirements for issuance of an LTC.  Mrs. Batty completed an application form on which she requested that her LTC be issued for "all lawful purposes."

31.     When Mrs. Batty submitted her application, an officer reviewed the form and interviewed her.  The officer told Mrs. Batty that "all lawful purposes" was not sufficiently specific.  Mrs. Batty then changed the form to request a license for "personal protection and defense" (or something substantially similar).  During the interview, Mrs. Batty told the officer that she sought to be able to use and carry a gun to protect herself and her family.

32.     On June 5, 2013 Chief Albertelli issued Mrs. Batty an LTC that did not carry any restriction.

33.     Mrs. Batty later moved to her current residence in Scituate.

34.     In January 2015 a representative of Chief Albertelli (Barbara Bosco) contacted Mrs. Batty and advised her that her LTC had been "issued without the approved Target and Hunting Restriction as originally directed by the Chief of Police."  The letter directed Mrs. Batty to return her LTC in favor of a restricted LTC and warned that Chief Albertelli would revoke her LTC if she did not.

35.     On January 26, 2015 Mrs. Batty turned in her LTC to the Winchester Police Department in exchange for an LTC that carries a "Target & Hunting" restriction.

36.     During the first half of 2013, Plaintiff Edward Russo applied for an LTC from Chief Albertelli.  Mr. Russo met all applicable requirements for issuance of an LTC.  Mr. Russo

requested that his LTC be issued without restriction for personal protection and other lawful purposes.

37.     On June 5, 2013 Chief Albertelli issued Mr. Russo an LTC that did not carry any restriction.

38.     In December 2014 a representative of Chief Albertelli contacted Mr. Russo and likewise advised him that his LTC had mistakenly been issued without a "Target & Hunting" restriction.  The letter directed Mr. Russo to return his LTC in favor of a restricted LTC and warned that Chief Albertelli would revoke his LTC if he did not.

39.     On February 5, 2015 Mr. Russo turned in his LTC to the Winchester Police Department in exchange for an LTC that carries a "Target & Hunting" restriction.

### CHIEF GRIMES AND THE WEYMOUTH POLICE DEPARTMENT

40.     Plaintiff Mary Learning applied for an LTC from Chief Grimes in 2013.  Ms. Learning met all applicable requirements for issuance of an LTC.  On her application, Ms. Learning requested that her LTC be issued "for lawful purposes only."

41.     On October 9, 2013 Chief Grimes issued Ms. Learning a "Class A" LTC carrying the restriction of "Target & Hunting."

42.     Plaintiff Ken Trudell applied for an LTC from Chief Grimes in 2013.  Mr. Trudell met all applicable requirements for issuance of an LTC.  On his application, Mr. Trudell requested that his LTC be issued "for all lawful purposes."

43.     At the time he submitted his application, Mr. Trudell specifically requested that Chief Grimes issue him an LTC that did not carry restrictions.  Officer Chase, who accepted Mr. Trudell's application, stated that the town's policy was to only issue unrestricted licenses to businesses owners and individuals required to carry guns in the course of their employment.

44.     On October 17, 2013 Chief Grimes issued Mr. Trudell a "Class A" LTC carrying the restriction of "Target & Hunting."

## CHIEF TAYLOR AND THE LOWELL POLICE DEPARTMENT

45.     In November 2014 Plaintiff Matt Wolf applied for an LTC from Chief Taylor of the Lowell Police Department.  Mr. Wolf met all applicable requirements for issuance of an LTC.  Mr. Wolf completed an application on which he requested that his LTC be issued for "all lawful purposes."

46.     Mr. Wolf submitted his application by making an appointment with a female police officer, believed to be Detective Karen Witts.  This officer did not review the application that Mr. Wolf had filled out, but instead, she interviewed Mr. Wolf and typed his information into a computer.  Mr. Wolf stated that he wanted an unrestricted LTC for all lawful purposes, and the officer told him that the Police Department would not issue him an unrestricted license.  The officer told Mr. Wolf that they only issued unrestricted licenses to law enforcement officers, owners of businesses who carried cash, and victims of violent crimes.

47.     On December 8, 2014 Chief Taylor issued Mr. Wolf an LTC with the restriction of "Sporting."

48.     Plaintiff Paul P. Barnett previously lived in Middleboro, Massachusetts, where he had applied for and obtained an LTC that was unrestricted.  Mr. Barnett thereafter moved to Lowell.  His Middleboro LTC had an expiration date of May 6, 2014.

49.     On April 17, 2014 Mr. Barnett applied to renew his LTC with Chief Taylor.  Mr. Barnett met all applicable requirements for issuance or renewal of an LTC.  On his application, Mr. Barnett requested that his LTC be issued for "all lawful purposes."

50.     At the time that Mr. Barnett submitted his application, Detective Witts, who accepted the application, told him that the Police Department would not issue him an unrestricted

license, but that the license would be subject to a restriction. Detective Witts stated that the Department only issued licenses to victims of violent crimes and individuals who owned "high risk" cash businesses such as gas stations.

51.     Soon thereafter, and with an effective date of May 6, 2014, Chief Taylor issued Mr. Barnett a "Class A" LTC with the restriction of "Sporting."

52.     In approximately October 2014, Plaintiff Craig Vacca applied for an LTC from Chief Taylor. Mr. Vacca met all applicable requirements for issuance of an LTC.

53.     Mr. Vacca submitted his application by making an appointment with a female police officer, believed to be Detective Witts. Detective Witts interviewed Mr. Vacca and typed his information into a computer. Mr. Vacca told Detective Witts that he wanted an unrestricted LTC for the purposes of personal protection and target shooting, and the officer told him that the Police Department would not issue him an unrestricted license.

54.     On November 12, 2014 Chief Taylor issued Mr. Vacca an LTC with the restriction of "Sporting."

### CHIEF PROVENCHER AND THE NEW BEDFORD POLICE DEPARTMENT

55.     Plaintiff David Goldman is (and at all material times has been) married to Plaintiff Janele Goldman. Both Mr. and Mrs. Goldman reside together.

56.     In October 2014 both Mr. and Mrs. Goldman applied for LTC's from Chief Provencher of the New Bedford Police Department. Both Mr. and Mrs. Goldman met all applicable requirements for issuance of LTC's. Both Mr. and Mrs. Goldman completed application forms on which they requested that their LTC's be issued for home and personal protection. In addition, both Mr. and Mrs. Goldman submitted letters in which they stated that they sought LTC's for the purpose of self-protection.

57.     On October 20, 2014 Chief Provencher issued Mrs. Goldman an LTC with the restriction of "Sporting."

58.     On October 29, 2014 Chief Provencher issued Mr. Goldman an LTC with the restriction of "Sporting."

59.     Mr. Goldman then contacted Chief Provencher by email to request that the restrictions on their LTC's be removed.  A delegate of Chief Provencher responded that "[i]t is the chief's standard to issue all first time applicants with the 'sporting' restriction."

### INJURY TO THE PLAINTIFFS

60.     The restriction of the above individual Plaintiffs' LTC's to "sporting," "target," and/or "hunting" purposes precludes these Plaintiffs from possessing, using, or carrying handguns for the purpose of self-protection.  But for these Plaintiffs' fear that their LTC's would be suspended or revoked and/or that they would be fined, each of these Plaintiffs would possess, use, and carry a handgun for the purpose of self-protection.

61.     Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code.  The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms.  Comm2A brings this action on its own behalf and on behalf of its members.

62.     Plaintiff Comm2A has members and supporters throughout (and beyond) Massachusetts, including members and supporters who hold LTC's that the Winchester, Weymouth, Lowell, and New Bedford Police Departments issued with "sporting," "target," and/or "hunting" restrictions.  Plaintiffs Jean Batty, Edward Russo, Mary Learning, Ken Trudell, Matt Wolf, Paul P. Barnett, Craig Vacca, David Goldman, and Janele Goldman are all members of Comm2A.  These and other members and supporters of Comm2A would possess, use, and

carry handguns for the purpose of self-protection, but they refrain from doing so out of the fear that their LTC's would be suspended or revoked and/or that they would be fined.

63.    In addition, Comm2A expends significant resources assisting people who receive restricted LTC's under the authority of M.G.L. c. 140, § 131, including specifically people receiving restricted licenses from the Winchester, Weymouth, Lowell, and New Bedford Police Departments.  Both members and supporters of Comm2A and members of the general public have contacted Comm2A as a result of the restriction of their LTC's.  Comm2A would not expend its organizational resources to respond to these demands if Defendants did not impose restrictions in the first instance.  Comm2A would instead use its organizational resources to pursue other organizational priorities.

64.    All of the Plaintiffs' injuries are irreparable because people are entitled to enjoy their constitutional rights in fact.

## COUNT I

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

65.    Massachusetts' LTC licensing scheme, and in particular M.G.L. c. 140, § 131(a) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

66.    Defendants have exercised this authority by issuing Plaintiffs LTC's that prohibit them from carrying and using handguns for the purpose of self-defense and have thereby deprived Plaintiffs of their right to keep and bear arms.

67.    Defendants have further exercised this authority by adopting policies, customs, and/or practices of issuing LTC's with "sporting," "target," and/or "hunting" restrictions that prohibit carrying or using handguns for the purpose of self-defense.

68.     Defendants have thereby infringed Plaintiffs' rights under the Second Amendment and the Due Process Clause of the Fourteenth Amendment, and Defendants have damaged Plaintiffs in violation of 42 U.S.C. § 1983.

## COUNT II

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

69.     Massachusetts' LTC licensing scheme, and in particular M.G.L. c. 140, § 131(a) & (d), vests local licensing officials with the authority to impose restrictions on LTC's as they "deem[ ] proper."

70.     Defendants have exercised this authority such that the ability of law-abiding citizens of Massachusetts to exercise their fundamental right to bear arms often turns on arbitrary considerations, such as whether an individual resides on the correct side of a local boundary line, has a lot of cash, has a place of business in another locality that issues unrestricted LTC's, or has held an LTC for some period of time.

71.     The aforesaid statute, and Defendants' implementation of this statute, violates Plaintiffs' Second Amendment right to keep and bear arms and their Fourteenth Amendment rights to due process and equal protection of the laws, and damages Plaintiffs in violation of 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

    i.    declaratory judgment that M.G.L. c. 140, § 131(a) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

    ii.    declaratory judgment that Defendants' policies, customs, and/or practices implementing M.G.L. c. 140, § 131(a) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified

private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," and similar purposes;

iii.    declaratory judgment that M.G.L. c. 140, § 131(a) & (d) violate the Equal Protection Clause to the extent they allow similarly situated, law-abiding citizens to be treated differently for purposes of exercising their fundamental right to carry a loaded and operable handgun for self-protection, in a manner not sufficiently tailored to a sufficiently important government interest;

iv.    injunctive relief directing Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, to issue to Plaintiffs Jean Batty; Edward Russo; Mary Learning; Ken Trudell; Matt Wolf; Paul P. Barnett; Craig Vacca; David Goldman; and Janele Goldman LTC's that do not carry "sporting," "target," or "hunting" restrictions, nor any other similar restrictions that would preclude the carry and use of handguns for self-protection;

v.    injunctive relief precluding Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who receive notice of the injunction, from issuing LTC's with "sporting," "target," or "hunting" restrictions, or with any other similar restriction that would preclude the use of handguns for self-protection;

vi.    such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and

vii.    attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: March 11, 2015

                                         Respectfully submitted,

                                         THE PLAINTIFFS,

                                         By their attorneys,

                                         /s/ David D. Jensen
                                         David D. Jensen, Esq.
                                         Admitted *Pro Hac Vice*
                                         DAVID JENSEN PLLC
                                         111 John Street, Suite 420
                                         New York, New York 10038
                                         Tel:  212.380.6615
                                         Fax:  917.591.1318
                                         david@djensenpllc.com

                                         Patrick M. Groulx, Esq.
                                         BBO No. 673394
                                         Grolman, LLP
                                         321 Columbus Avenue
                                         Boston, Massachusetts 02116
                                         Tel:  617.859.8966
                                         Fax:  617.859.8903
                                         patrick@grollmanllp.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on 11 March 2015.

                                         /s/ David D. Jensen
                                         David D. Jensen