# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEAN BATTY; EDWARD RUSSO; MARY LEARNING; KEN TRUDELL; MATT WOLF; PAUL P. BARNETT; CRAIG VACCA; DAVID GOLDMAN; JANELE GOLDMAN; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> KEN ALBERTELLI, in his official Capacity as Chief of the Winchester Police Department; RICHARD C. GRIMES, in his Official Capacity as Chief of the Weymouth Police Department; WILLIAM TAYLOR, in his Official Capacity as Superintendent of the Lowell Police Department; and DAVID A. PROVENCHER, in his Official Capacity as Chief of the New Bedford Police Department, <br><br> Defendants. | CIVIL ACTION NO. 1:15-cv-10238-FDS |

## PLAINTIFFS' OPPOSITION TO DEFENDANT SUPERINTENDENT TAYLOR'S MOTION TO STAY

Abstention under <u>Railroad Comm'n v. Pullman Co</u>., 312 U.S. 496 (1941), is a narrow and extraordinary exception to a federal court's duty to adjudicate cases – and one that is plainly unavailable here because it applies only where there is both a real question about what a state law means, as well as a real probability that answering that question will resolve the case before the Court.  Defendant identifies no specific aspect of the law that is unsettled and no way in which that uncertain aspect would resolve the claims against him.  Indeed, it would be impossible for Defendant to do this, since the parameters of his policy are not in the record.  Rather, Defendant's motion relies on the bare assertion that there is an "unsettled question of the

specific parameters to lawfully restrict a license" that would somehow be likely to resolve this matter. <u>See</u> Deft. Br. p. 2. However, the law is not unclear merely because Defendant repeatedly calls it "unsettled," "unresolved," or "novel," nor do these nonspecific assertions establish any probability that abstention would moot the present controversy. Defendant comes nowhere near the showing that would be needed to justify resorting to abstention.

**(I)** **PULLMAN ABSTENTION IS A NARROW AND EXTRAORDINARY EXCEPTION THAT REQUIRES SUBSTANTIAL UNCERTAINTY ABOUT A STATE LAW**

A federal court has a "*duty . . .* to adjudicate a controversy properly before it.'" <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) (quoting <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188 (1959)) (emphasis added). Abstention stands as an "an extraordinary and narrow exception to th[is] duty," and one that is available only in "exceptional circumstances." <u>Id.</u> (quoting <u>County of Allegheny</u>, 360 U.S. at 188-89). Specifically, <u>Pullman</u> abstention requires both that "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." <u>Batterman v. Leahy</u>, 544 F.3d 370, 373 (1st Cir. 2008); <u>see also</u> <u>Ford Motor Co. v. Meredith Motor Co.</u>, 257 F.3d 67, 71 (1st Cir.2001). Neither factor is present, making abstention manifestly unavailable.

**(II)** **DEFENDANT HAS NOT SHOWN ANY UNCERTAINTY, LET ALONE SUBSTANTIAL UNCERTAINTY**

**(a) The Statutory Power to Restrict LTC's is Clear**

The statute explicitly provides that LTC's are "subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority *deems proper*." M.G.L. c. 140,

§ 131(a) (emphasis added).[1]  The General Court added this language in 1998.  1998 Mass. Acts ch. 180, § 41, sec. 131(a).  No part of the statute cuts back from or limits this broad grant of authority, nor does any judicial decision handed down during the intervening 17 years.

Indeed, even before the 1998 amendment, it was clear that Massachusetts law gave licensing authorities broad discretion to place restrictions on LTC's.  Since its 1906 enactment, the LTC law has substantively provided that licensing authorities "may . . . issue a license . . . if it appears that the applicant has good reason to fear injury to his person or property. . . ."  1906 Mass. Acts ch. 172, § 1, <u>codified as amended</u> at M.G.L. c. 140, § 131(d).[2]  In 1984, the Appeals Court concluded that this language gave licensing authorities the implicit power to impose restrictions on the rationale that "the Legislature would [not] have gone to the effort of providing a 'proper purpose' requirement in § 131 or of identifying two such purposes unless the Legislature intended that the licensing authority have the power to limit any license granted under § 131 to a specified purpose."  <u>Ruggiero v. Police Comm'r of Boston</u>, 464 N.E.2d 104, 107, 18 Mass. App. Ct. 256, 260 (1984).  The 1998 "deems proper" amendment merely removed the textual connection between the power to restrict and the "good reason" and "proper purpose" language.

Because § 131(d) explicitly authorizes licensing authorities to impose restrictions as they "deem[] proper" without further limitation, there is no doubt (and surely no substantial doubt) that licensing authorities can do just that – impose restrictions if they deem it proper to do so.

---

[1] M.G.L. c. 140, § 131(b) authorizes the restriction of "Class B" licenses using language that is essentially verbatim, but licensing authorities can no longer issue LTC's under this sub-part of the statute.  <u>See</u> 2014 Mass. Acts. ch. 284, § 109.

[2] In 1919 and 1936 the General Court amended the statute to its current substantive form by providing that licensing authorities could issue LTC's "for any other proper purpose" and then specifying "target practice" as one such proper purpose.  <u>See</u> 1936 Mass. Acts ch. 302; 1919 Mass. Acts ch. 207, § 1.

Indeed, in light of this unambiguous language, there would need to be some good and specific reason for concluding to the contrary – a reason never identified by Defendant.  The approach of the Court of Appeals for the First Circuit in Pustell v. Lynn Public Schools, 18 F.3d 50 (1st Cir. 1994), bears this out.  In this case – the only First Circuit decision located in counsel's research that addresses Pullman concerns in the context of a statute that expressly delegates regulatory authority to local officials – a Massachusetts compulsory attendance law also provided a broad delegation of regulatory authority by exempting children "being otherwise instructed in a manner approved in advance by the superintendent or the school committee."  Id. at 53 (quoting M.G.L. c. 76, § 1).  The defendant school district had adopted regulations "[p]ursuant to this statutory authority," and the plaintiffs asserted that these regulations were unconstitutional.  See id.

The court in Pustell found Pullman abstention justified, notwithstanding the otherwise unbounded nature of the statutory delegation, because a ruling of the Supreme Judicial Court had both limited the grant of authority and suggested that the practice at issue in the case might not be permissible.  Specifically, the Massachusetts high court had previously ruled that "the approval of a home school proposal must not be conditioned on requirements that are not essential to the State interest in ensuring that all the children shall be educated," and it had further signaled that a home visitation requirement – the precise policy aspect that the plaintiffs challenged – might not be permissible.  Id. at 54 (citing and quoting In re Care & Protection of Charles, 504 N.E.2d 592, 600-01, 399 Mass. 324, 337-40 (1987) (internal quotation omitted), and In re Kilroy, 467 N.Y.S.2d 318, 121 Misc. 2d 98 (N.Y. Family Ct. 1983)).  Thus, it was "equally plausible" to conclude that state law did or did not allow the practice the plaintiffs complained of, and there was accordingly a substantial and outcome-determinative uncertainty.  See id.  Here, in contrast, there is no decision that suggests that Defendant's policy (whatever it

is) might run afoul of the "deems proper" grant.  And as this Court has previously observed, this is not a situation where "state courts have not had an opportunity to construe" the requirements of § 131, including specifically "the delegation of discretionary authority to subject licenses to use restrictions."  Pineiro v. Gemme, no. 10-40262, 2011 U.S. Dist. LEXIS 117749, *17 (D. Mass. Oct. 12, 2011).

**(b) The Court's Concern in Davis**

Defendant's motion relies largely on the Court's memorandum and order of March 26, 2014 in Davis v. Grimes, but the circumstances presented there were quite different.  In that case, the Weymouth Police Department had identified a "categorical" policy of "grant[ing] only target and hunting licenses to first-time applicants" unless they were "members of law enforcement, members of the military, or business owners who substantiate that they deal with large amounts of cash."  Memorandum and Order (Doc. No. 71) pp. 28-29, in Davis v. Grimes, no. 1:13-cv-10246.  The Court's concern was that "a categorical policy that *no* first-time applicant (with certain exceptions not relevant here) can *ever* show a 'good reason to fear injury to his person or property'" was "difficult to reconcile with the language of the statute." Id. at p. 29 (emphases in source).  While Plaintiffs do not consider this policy difficult to reconcile (at least in light of the 1998 amendment) the Court never had to resolve the issue because the Weymouth Police Department subsequently changed its policy.  See, e.g., Supp. Memorandum (Doc. No. 96) pp. 2-3; 2d Supp. Aff. of R. Grimes (Doc. No. 75-1) ¶¶ 2-3 in Davis v. Grimes, no. 1:13-cv-10246.

**(c) Defendant's *Undisclosed* Policy Does Not Raise This Concern**

While the defendant in Davis had identified a specific policy that governed his decision to impose restrictions – thereby leading the Court to question whether a parameter of that policy was consistent with another aspect of Massachusetts law – the Defendant here has not.  Rather,

Defendant emphasizes that he "makes no admissions regarding the Plaintiffs' claims against Lowell," and for that matter, does not even concede the "purported issuance of restricted licenses" to the Plaintiffs – at the selfsame time he refuses to answer the suit.  Deft. Br. pp. 2, 7. Thus, Defendant advocates the extraordinary exception of abstention on the mere ground that "this action concerns the specific parameters under which a licensing authority under MGL c. 140, § 131, may permissibly issue restrictions," id. p. 5 – even though there are no specific parameters before the Court.

This is patently insufficient.  "The Supreme Court has frequently stressed that abstention is not justified by the mere possibility that a state court *might* interpret a state statute so as to alter or moot a federal constitutional question; abstention is only appropriate where state law is genuinely unsettled."  Guiney v. Roache, 833 F.2d 1079, 1084 n.4 (1st Cir. 1987) (emphasis in source).  And that means there must be a "real dispute" about what the state law means.  Id. at 1081.  The statute must be "'fairly subject to'" or "obviously susceptible of" a modifying or limiting interpretation that would avoid the constitutional issue.  Houston v. Hill, 482 U.S. 451, 468 (1987) (quoting Harman v. Forssenius, 380 U.S. 528, 534-35 (1965)).  Here, it is impossible to make any such finding because there are no policy parameters before the Court, and there is accordingly no basis for finding a dispute (real or otherwise) about whether state law permits one or more of those parameters.  Just the same, there is no basis for concluding that a state-court resolution of the unknown parameters of Defendant's policy would be likely to obviate this case. Neither ground for Pullman abstention is present.

Indeed, this Court has already found that the statutory power to restrict does not, standing alone, present an issue appropriate for Pullman.  In Pineiro v. Gemme, this Court rejected Pullman abstention on the question of whether "§ 131 is unconstitutional because it delegates

unfettered discretion to the licensing authority as to license restrictions," even though in that case the plaintiff had commenced a state-court action before bringing his claims in federal court.  See Pineiro, 2011 U.S. Dist. LEXIS 117749 at *24.  As this Court correctly reasoned, the authority to impose restrictions is "vast," and "state law is sufficiently clear for this Court to engage in its constitutional analysis."  Id.

### (d) The Availability of State Courts is Irrelevant

Defendant also advocates abstention on the rationale that the Plaintiffs could instead choose to seek relief in state court.  See Deft. Br. pp. 4, 6-7.  Of course, this is true of virtually any constitutional claim – and the argument would turn 150 years of civil rights jurisprudence on its head.  But see Patsy v. Bd. of Regents, 457 U.S. 496, 501-02 (1982) ("this Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983").  Moreover, Defendant ignores the more pertinent fact that there is no pending state-court action in which the Plaintiffs could raise their claims.  See Pineiro, 2011 U.S. Dist. LEXIS 117749 at *16 ("even when the state law is potentially ambiguous, abstention is disfavored unless a pending state-court action will likely resolve the state-law questions underlying the federal claim" (quotations omitted)).  And while it may true that litigation in state court would "develop a factual record," Deft. Br. p. 7, this is irrelevant.  Litigation in the forum Plaintiffs have already selected will definitely produce a factual record.  Defendant cites no authority that supports its claim that the mere availability of state court relief can justify abstention.  Quite to the contrary, "to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." Zwickler v. Koota, 389 U.S. 241, 252 (1967).

## CONCLUSION

There is no basis for <u>Pullman</u> abstention.  Defendant Superintendent Taylor must answer the complaint.

Respectfully submitted,
THE PLAINTIFFS,
By their attorneys,

David D. Jensen, Esq.
Admitted *Pro Hac Vice*
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

Patrick M. Groulx, Esq.
BBO No. 673394
Grolman, LLP
321 Columbus Avenue
Boston, Massachusetts 02116
Tel:  617.859.8966
Fax:  617.859.8903
Dated: May 26, 2015                    patrick@grolmanllp.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 26 May 2015.

/s/ David D. Jensen
David D. Jensen