UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: ) | |
| Jean Batty; Edward Russo; Mary ) | |
| Learning; Ken Trudell; Matt Wolf; ) | |
| Paul P. Barnett; Craig Vacca; David ) | |
| Goldman; Janele Goldman; and ) | |
| Commonwealth Second Amendment, ) | CIVIL ACTION NO. |
| Inc., ) | 1:15-cv-10238 |
| Plaintiffs. ) | |
| ———————————————) | |
| ) | |
| ) | |
| -against- ) | |
| ) | |
| Ken Albertelli, in his official Capacity as ) | |
| Chief of the Winchester Police Department; ) | |
| Richard C. Grimes, in his Official Capacity ) | |
| As Chief of the Weymouth Police ) | |
| Department; William Taylor, in his Official ) | |
| Capacity as Superintendent of the Lowell ) | |
| Police Department; and David A. ) | |
| Provencher, in his Official Capacity as the ) | |
| Chief of the New Bedford Police ) | |
| Department, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ———————————————— ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEN ALBERTELLI'S MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendant Ken Albertelli, Chief of Police of the Town of Winchester (Chief Albertelli) hereby moves this Court, pursuant to Federal Rule of Civil Procedure 12 (c) for judgment on the pleadings or, in the alternative, for summary judgment in favor of the Defendant. As grounds for this motion, Defendant Albertelli states that: 1) Plaintiffs fail, as a matter of law, to satisfy the standard for a substantive due process violation; 2) Plaintiffs fail to establish an actionable constitutional violation that similarly situated individuals were treated differently in violation of plaintiff's equal protection rights ; 3) Finally, Plaintiffs fail to establish an actionable deprivation of their Second Amendment rights by Defendant Chief Albertelli.

## I. **INTRODUCTION**

The current action was commenced by Plaintiffs Jean Batty ("Batty") and Edward Russo ("Russo") against Defendant Ken Albertelli, ("Albertelli") in his official capacity as the Chief of Police of the Town of Winchester and Local License Authority for the Town of Winchester for issuing Licenses To Carry Firearms ("LTC") to residents of the Town of Winchester pursuant to General Laws Chapter 140 Section 131. The suit alleges that Defendant Albertelli unlawfully imposed limitations on Plaintiffs' Batty and Russo handgun licenses which contained restrictions on the use of the firearm to targeting and hunting purposes that "prevent Plaintiffs from using handguns for the purpose of self protection which contravenes 'the right of the people to keep and bear arms' that the Second Amendment secures." (Complaint para.1)

To qualify for a LTC in Winchester, an individual must be a resident or must operate a business there. In December 2014, Chief Albertelli's staff notified Plaintiffs Batty and Russo

that their original unrestricted licenses issued in June 2013 were issued in error and failed to contain the restrictions Chief Albertelli had directed as the Local Licensing Authority and requested the Plaintiffs return the licenses and a corrected license to carry which included the restrictions limiting the licenses to Target and Hunting purposes would be issued. In response to his letter, the Plaintiffs returned their licenses and in January (Batty) 2015 and February (Russo) 2015 restricted licenses were reissued, which limited the use to Target and Hunting. The plaintiffs, without filing for further review as an aggrieved party as provided by G.L. 140 Section 131 (f), in March 2015, filed for the equitable relief requested here

Plaintiffs never sought the relief provided by the Massachusetts statutory scheme. Plaintiffs failed to follow G.L. Chap. 140 Section 131 (f) which allowed them, if "aggrieved", to petition the Woburn District Court for review of the Defendant's decision restricting their licenses. If the Court were to find that there were no reasonable grounds and the Chief's action were "arbitrary" or "capricious" or an abuse of discretion, the Chief's actions would have been overruled and the restrictions would have been removed. If the District Court were to agree with the Chief, the "aggrieved" person could seek further review in Superior Court by way of a petition in the nature of certiorari.

Plaintiffs here sought to avoid the statutory procedures by filing in the Federal Court and seeking relief that was anticipated by the Commonwealth alleging in their complaint that the Chief by restricting their licenses to targeting and hunting deprived the Plaintiffs of their right to keep and bear arms in violation of the Second Amendment of the United States Constitution.

As the arguments below indicate, Defendant Albertelli granting of the Plaintiffs' licenses with the restrictions included did not deprive the Plaintiffs of keeping the firearm for self-

3

protection purposes and that the licenses granted included the right of self protection and

protection of hearth and home.

The challenge to the licenses and the Chief's implementation of the provisions of Section

131 cannot be supported by the facts and the case law provided below. For the reasons set forth

below, the Defendant is entitled to judgment in this case.

## II. <u>STANDARD OF REVIEW</u>

The standard of review for Rule 12 (c) motion for judgment on the pleadings, 'is treated

much like a Rule 12 (b) (6) motion to dismiss' <u>Perez-Acevedo v. Rivero-Cubano</u> 520 F.3d 26, 29

(1st. Cir. 2008). It differs from a Rule 12 (b) (6) motion primarily because it is filed after the

close of pleadings and 'implicates the pleadings as a whole.' <u>Aponte-Torres v. University of</u>

<u>Puerto Rico</u> 445 F3d 50 (1st Cir. (2006). Because a Rule 12 (c) motion "calls for an assessment

of the merits of the case at an embryonic stage , the court must view the facts contained in the

pleadings in the light most favorable to the non-movant and draw all reasonable inferences

therefrom to the non-movant's behoof". <u>R.G.Financial Corp. v. Vergara –Nunez</u> 446 F.3d

178,182 (1st Cir. 2006). Courts may draw upon documents annexed to the complaint or

incorporated into it as well as matters subject to judicial notice.  <u>Aponte-Torres </u>at 54-55.

To survive a motion for judgment on the pleadings, the complaint must state a claim that is

plausible on its face. <u>Bell Atl. Corp v. Twombly</u> 550 U.S. 544,570, 127 S.Ct. 1955, 167 L.Ed. 2d

929 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the

speculative level….on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." <u>Id</u> at 555 (citations omitted).  "The plausibility standard is not akin to a

"probability requirement" but it asks for more than a sheer possibility that a defendant has acted

unlawfully. <u>Ashcroft v. Iqbal</u> 556 U.S. 662 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 868 (2009) quoting <u>Twombly</u> 550 U.S. at 556. The Court will therefore grant defendant's motion for judgment on the pleadings if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." <u>Ruiz Rivera v. Pfizer Pharms LLC</u> 521 F.3d 76, 84 (1ST. Cir. 2008).

The Court will grant a motion for summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56 (a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law. <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u> 217 F.3d 46, 52 (1st Cir. 2000) (quoting <u>Sanchez v. Alvarado</u> 101 F.3d 223,227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Carmona v. Toledo</u> 215 F.3d 124,132 (1st Cir. 2000); <u>see Celotex v. Catrett</u> 477 U.S. 317,323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in his/her pleadings. <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242,256 (1986) but, "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1,5 (1st Cir. 2010) "As a general rule, that requires the production of evidence that is "significant[ly] probative."" <u>Id</u> (quoting <u>Anderson</u> 477 U.S. at 249). The Court "view(s) the record in the light most favorable to the non-movant, drawing reasonable inferences in his favor." <u>Noonan v. Staples, Inc.</u> 556 F.3d 20, 25 (1st Cir. 2009)

# III. FACTS NOT IN DISPUTE

## Plaintiff Batty:

1. On March 24, 2013, Jean Batty, a resident of Winchester, applied for a license to carry from the Winchester Police Department. (Exhibit 1)

2. The application form requested that the license be issued for "all lawful purposes, personal protection and self-defense." (Exhibit 1 page 3 of 3)

3. At the time of the application, the applicant indicated that that she resided in the Town of Winchester. (Exhibit 1 page 1 of 3) ).

4. On June 5, 2013, a license to carry without restriction was issued in error to Jean Batty by the Town of Winchester which indicated her current residence at 58 Bacon Street, Winchester. Exhibit 2)

5. By the end of June 2013, Plaintiff Batty no longer lived on Bacon Street in Winchester. (Exhibit 3 Batty Depos. Page 12 l. 7-8)

6. On December 31, 2014 a letter to Plaintiff from the Defendant's staff , directing Plaintiff Batty to turn in her unrestricted license was addressed to 58 Bacon Street, Winchester, MA. (Exhibit 4 )

7. On January 26, 2015, Jean Batty's husband returned her license and she was issued a corrected license with a "Target & Hunting" restriction. (Exhibit 5 )

8. At no time after the issuance of the corrected licenses did Plaintiff Batty take any action pursuant to M.G.L Chapter 140 Section 131 (f) seeking relief from Chief Albertelli's action as an "aggrieved" person. (Exhibit 3 Batty Deposition  p. 25 l. 3-16 )

**Jean Batty**:

- Never had a license to carry (Exhibit 1 Batty License Application  p.1)

- Never been to the target range.  (Exhibit 3 Batty Deposition p. 13  l. 11-12)

- Never owned a gun. (Exhibit 3 Batty Deposition p.13  l. 7-12)

- Only experience with shooting a gun other than when certifying was when she was in camp as a "kid" (Exhibit 3 Batty Deposition p.13 l.13-22.)

- Had a "full license" from June 2013-Jan. 2015, never purchased  a gun (Exhibit 3 Batty Deposition Page 13 l. 7-12).

- Stated never owned a gun because she was denied a license to carry. (Exhibit 3 Batty Deposition p. 13 l. 13. P. 14 l. 3)

- References 9.11 2001, and Boston Marathon as reason for applying for a license. (Exhibit 3 Batty Deposition p.22  l.18 –p. 23 l. 13

**Plaintiff Russo**:

1. On March 13, 2013, Edward Russo , a resident of Winchester, applied for a license to carry a firearm  from the Winchester Police Department. (Exhibit 6 ).

2. The application form requested that the license be issued for "all lawful purposes", personal protection". (Exhibit 6,Russo License Application  page 3 of 3)

3. In December 2014 Defendant's staff sent an undated  letter to Russo directing him to turn in the unrestricted license. (Exhibit 7).

4. On February 6, 2015, Russo turned in his full license and was granted the corrected license with the "Targeting & Hunting" restriction. (Exhibit 8)

5. At no time after the issuance of the corrected licenses did the Plaintiffs take any action pursuant to M.G.L Chapter 140 Section 131 seeking relief from Chief Albertelli's action as an "aggrieved" person. (Exhibit 9 Russo Deposition p. 15 l. 16-22 )

**Ed Russo :**

- Never owned a gun. (Exhibit 9 Russo Deposition p. 8 l. 15-18.)

- Had a full license from June 2013 to January 2015, never purchased a gun.(Exhibit 9 Russo Deposition p. 8 l. 15-18.)

- When applying, it was for no particular event, ´nothing never happened to me."( Exhibit 9 Russo Deposition p. 8 l. 19-23.)


# IV. STATUTORY SCHEME FOR MASSACHUSETTS FIREARMS LICENSING, REVOCATION AND APPEAL PROCESS


An individual who lawfully wants to carry a firearm within the Commonwealth either must obtain a license to do so pursuant to Massachusetts General Law Chapter 140 Section 131 or be exempt from the statutory licensing requirements. It is a felony to carry a firearm in public without a valid license. G.L. c.269 §10. The historical aim of licensure generally in the Commonwealth is the preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications. Le Duc v, Commonwealth 421 Mass. 433,435 (1995) cert. denied 519 U.S. 827 (1996). In the absence of a restriction,

Massachusetts General Law Chapter 140 Section 131(a) does not prohibit the possession or carrying of a concealed firearm in public. Hightower v. Boston, 693 F.3d 61,66 (1st Cir. 2012).

As this Court indicated in Pineiro v. Gemme , 937 F. Supp. 161,167 (D Ct. Mass 2013) in making the eligibility decision, the Chief, as the Local Licensing Authority, is required to conduct a "two-step" inquiry as to Applicant's eligibility. See, Ruggiero v. Police Com'r of Boston, 18 Mass. App. Ct. 256,259 (1984). At this stage, the Chief makes a determination of the applicant's suitability for the license. Id. The "suitable person" standard gives the Local Licensing Authority "considerable latitude" or broad discretion in making the licensing decision. However, even when the applicant meets the requirements, the license authority may issue the license with restrictions as the Chief deems proper. G.L. 140 Section 131 (a). The Chief, as a second step, evaluates whether the Applicant has the "proper purpose" for carrying the firearm. Ruggiero. at 259. G.L. Chapter 140 Section 131 (d) places the burden on the Applicant to show "good reason to fear injury to his person or property....". The Courts have held that the second inquiry is a prerequisite to license approval and is distinct from the "suitable person" determination. Ruggiero at 260. When the applicant seeks the license soley for self-protection and nothing more, the applicant fails to distinguish him/her self from the general public and does not require the Chief to issue the license for self-defense in public. Pineiro, supra at p.167.

If the application is denied, the "aggrieved party" (applicant) may file, "a petition to obtain judicial review in the district court having jurisdiction in the city or town" where the

application was filed. G.L. 140 Section 131 (f).[1] The District Court, with jurisdiction, after

an evidentiary hearing, may reverse the Licensing Authority's determination only if it is has

no reasonable ground or is arbitrary, capricious or an abuse of discretion. Chief of Police of

Shelbourne v. Moyer, 16 Mass App. Ct. 543, 546 (1983). Further judicial review is available,

to the petitioner by way of an action in the nature of certiorari. G.L Chapter 249 Section 4. ,

See also Levine v. Chief Justice of the District Court Dept. of the Trial Court 434 Mass.

1014, 1014  (2001).


## V.  <u>WINCHESTER RESTRICTIONS ON THE LICENSE TO CARRY</u>

The following levels define the various restrictions for Licenses to Carry firearms in effect in

January 2015.

1. **None –** A license issued for all lawful purposes with no restrictions.

2. **Target and Hunting--** Restricts possession to personal protection in the home; use for

   the purposes of recreational shooting or competition ; for use in the lawful pursuit of

   game, and other animals and birds; for purposes of collecting ; and includes travel to and

   from the activity location.

3. **Sporting--**  Restricts possession to the purposes of lawful recreational shooting or

   competition , for use in the pursuit of game and other animals and birds; for personal

   protection in the home; and for purposes of collecting and for outdoor activities such as

   hiking, camping, cross country skiing, or similar activities . It includes travel to and from

   activity location.

---

[1] The reissued licenses carry an expiration date based upon the original issue. Section 131 (f) provided a ninety day window to file the petition. In January 2015, section131 (f) was amended and removed the window leaving it open ended. The amendment does not impact the Plaintiffs' filing in the Federal Court either way.

4. **Employment--** Restricts possession to business owner engaged in business activities or to an employee while engaged in work related activities , and maintaining proficiency, where the employer requires the carrying a firearm. Written verification stating need on the official letterhead of the company shall be submitted with the application. It included travel to and from activity location.

5. **Other--** The Chief of Police creates a restriction he/she deems proper.

## VI.  FEDERAL CONSTITUTIONAL FRAMEWORK

The Second Amendment of the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms shall not be infringed." The United States Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008) while striking down a District of Columbia Statute, considered "whether a District of Columbia prohibition on the possession of useable handguns violated the Second Amendment. Heller at 573. The Court concluded that the Second Amendment guaranteed an individual's right to keep and bear firearms in one's home for the purpose of self-defense. Id at 635. Further the Court opined that the Second Amendment "elevates above all other interests the right of law abiding, responsible citizens to use arms in defense of hearth and home. Id at 628,635. Since Heller , the First Circuit has noted that "Courts have consistently recognized that Heller established that the possession of operative firearms for use in the defense of the home constitutes the 'core' of the second amendment." Hightower v. Boston , 693 F.3d 61,72 (1st Cir. 2012), citing United States v. Booker 644 F.3d 12, 25 n.17 (2011), cert. denied 132 S.Ct. 1538 (2012); See also Commonwealth v. McGowan, 464 Mass. 232, 235 (2013) and cases cited. Further, the United States Supreme Court held in

2010 that the individual's Second Amendment right was fully applicable to the States through the Fourteenth Amendment. McDonald v. Chicago 561 U.S. 742 (2010). In Heller, the Supreme Court recognized that the Second Amendment right does not prohibit laws from regulating who may purchase, possess, and carry firearms and where such weapons may be carried. Heller at 626-627.

## ARGUMENT

### A. Plaintiffs Failed to Exhaust their Administrative Remedies as provided in Massachusetts General Laws Chapter 140 Section 131 (f)

Plaintiff Jean Batty and Plaintiff Edward Russo both filed for a License to Carry Large Capacity to the Town of Winchester in March 2013. On June 6, 2013, the Local Licensing Authority (Chief Albertelli) issued a license to Plaintiff Batty at 58 Bacon Street, Winchester in accordance with Massachusetts General Laws Chapter 140 Section 131. On June 12, 2013, the Local Licensing Authority (Chief Albertelli) issued a license to Plaintiff Russo at 18 Glenwood Ave, Winchester in accordance with Massachusetts General Laws Chapter 140 Section 131.

At the time these licenses and others issued, there was an administrative error and the licenses were issued without the restrictions ordered by Defendant Albertelli, (Exhibit 10 Chief Albertelli Depos.p. 59 l. 5-13   ), the licenses were issued with no restrictions. At the time of the issuance both Plaintiffs were residence of the Town of Winchester, although Plaintiff Batty had sold her residence on April 24, 2013. In December 2014, Defendant

Albertelli having discovered the discrepancy on the licenses between what he authorized and what was granted to both these Plaintiffs, he ordered that the licenses along with several others be returned to the Town and corrected licenses reflecting the restriction of Targeting and Hunting be issued to the two license holders.( Exhibit 5and 8 ). On January 26, 2015, the restricted license replaced the original for Plaintiff Batty. On February 5, 2015, the restricted license was replaced the original for Plaintiff Russo.   On March 13, 2015, the current action was filed at United States District Court alleging that the imposition of the restrictions limiting the license to "sporting, target and/ or hunting restrictions prevent the Plaintiffs from using the handguns for the purpose of self- protection.

G.L. 140 Section 131 (f) provides that if an applicant or holder of a License to Carry Firearms, pursuant to the statutory scheme, is aggrieved by the local licensing authority, i.e. Chief Alterbelli, he/she may file " a petition to obtain judicial review in the district court having jurisdiction in the city or town" where the application was filed.  A judge after an evidentiary hearing, may direct that a license be issued to the petitioner if the judge finds that there was "no reasonable ground" for denying such license and that the petitioner "is not prohibited by law from possessing the same." Id. The petitioner is entitled to relief only if the license authority's denial was "arbitrary, capricious, or an abuse of discretion" Further judicial review is available in the Superior Court to the petitioner by way of an action in the nature of  certiorari. G.L Chapter 249 Section 4. , See also Levine v. Chief Justice of the District Court Dept. of the Trial Court 434 Mass. 1014, 1014  (2001); Chief of Police of Shelburne v.Moyer 16 Mass. App. Ct. 543,546 (1983).

Both  Plaintiffs acknowledge that they received the modified licenses but did not file for relief in the State Courts as an "aggrieved" person pursuant to the procedure set forth in G.L.

13

140 Section 131 (f). Shortly after receiving the corrected licenses Plaintiff's did file in the United States District Court for "Preliminary Equitable Relief".

This action in the United States District Court was filed without the administrative process anticipated in Section 131 (f) being completed in an attempt to avoid the state process. Section 131 (f) provides judicial review of the administrative actions taken by the Defendant Alterbelli and if appropriate to overrule or modify the decision. (Exhibit 3 Batty Depos. P. 22 l.18 -- p. 23 l.13) ; Exhibit 9 Russo Depos. P. 8 l.19-23). Without initiating any petition to seek this review in the state courts, the plaintiffs have determined that the Chief's decision were arbitrary and capricious usurping the jurisdiction of the Woburn District Court. The Defendant issued to the Plaintiffs a License to Carry defining its use to those uses described by the Targeting and Hunting License.:

**Target and Hunting--** Restricts possession to personal protection in the home; use for the purposes of recreational shooting or competition ; for use in the lawful pursuit of game, and other animals and birds; for purposes of collecting ; and includes travel to and from the activity location.

Both Plaintiffs Batty and Russo on their applications provided the stated reason for the license was "personal protection" and "self defense" in the case of Plaintiff Batty (Exhibit 1 p.3) and for "personal protection" in the case of Russo. (Exhibit 5, page 3 ), There are no facts that would support a Plaintiffs' argument that Defendant Albertelli acted in any way in violation of the G.L 140 Section 131. They took no appeal of his decision making process. In fact, there are no statements from the Plaintiffs which would in any way provide a basis to indicate they were "unique" or at least different from the general public in seeking their full licenses.

14

As such, the Plaintiffs are seeking Federal relief from a decision avoiding the normal review of the Chief's decision. The Plaintiffs have yet to describe or define the basis of their complaint other than to indicate that the imposition of restrictions "often turns on arbitrary considerations, such as whether an individual resides on the correct side of a local boundary line, has a lot of cash, has a place of business in another locality that issues unrestricted LTC's or has held an LTC for some period of time." Complaint Para. 70. Even if *arguendo,* we would agree those reasons might be arbitrary, there are no facts in the record to indicate that any of these reasons were considered by the Defendant. There is no record to support any challenge to the application process. In their own statements, there was nothing to separate Plaintiffs personal fear from that of the general public. (Exhibit 3 Batty Depos.p. 22 l.18-p.23 l.13 ; Exhibit 9 Russo Depos.p.8 l. 19-23 ) Plaintiffs have no standing to challenge in the Federal Court, as the action is premature and there is no harm or injury to support this action and the constitutional claim. On this basis alone, the Complaint by both must be dismissed.

**B. Neither  G.L. Chapter 140 Section 131 nor Chief Alterbelli's Implementation of the Requirements of the Statute  Violate the United States Second Amendment as Applicable Through the Fourteenth Amendment**

If the Court were to decide that the Plaintiffs had standing to petition the Federal Court without exhausting the state administrative process, there is no factual or legal basis to support any violation of the Second Amendment by the Defendants in implementing  the administrative structure to license individuals for carrying firearms and imposing limitations on the licenses granted.

Count 1 and II of the Complaint as they relates to Defendant Albertelli alleges that the Chief by prohibiting the Plaintiffs from carrying firearms for self defense purposes infringed deprived them of their right to bear arms thereby violating Plaintiffs' federal constitutional rights under the Second Amendment and the Due Process Clause of the Fourteenth Amendment and violated 42 U.S.C. Section 1983.. Complaint Paras 66, 68. Specifically, Chapter 140 sections 129B and 131 describe the statutory process which provides the Local Licensing Authority wide discretion in the issuance of the licenses to carry firearms. In the case of the two Plaintiffs, the Defendant placed a restriction on each license for Target and Hunting use but allows the firearm use inside the home for personal protection. (See Section VI above)

In <u>District of Columbia v. Heller</u> 554 U.S. 570 (2008), the Supreme Court struck down a District of Columbia law banning all gun possession after determining that the Second Amendment protects the individual right of "law abiding, responsible citizens to use arms in the defense of hearth and home" at 635. In doing so, the Court explained that "the right secured by the Second Amendment is not unlimited" and that "nothing in this opinion should be taken to cast doubt on the long standing prohibitions on possession of firearms by felons and the mentally ill…." Id at 626-627. The Court further stated these (prohibitions) "presumptively lawful regulatory measures only as examples" and not as an "exhaustive" list. Id at 627. The Court went only so far in defining the individual right under the Second Amendment as the right to possess a firearm: 1) by law abiding, responsible citizens, 2) in the home. Id at 635. The Plaintiffs challenge of Defendant's implementation of G.L 140 Section 131 does not implicate this right. The restrictions imposed by the Defendant allows the applicants' right to possess firearms in the home for self- protection as well as other

limited (outside) uses. These rights are presumptively lawful in that they do not limit rights protected by the Second Amendment.

Neither  Heller or McDonald recognize a right to carry a handgun outside the sanctuary of the home. In Heller, the Court " stressed that 'the home" is 'where the need for defense of self and family and property is most acute" … and further explained that the Second Amendment " elevates above all other interests the right of law abiding, responsible citizens to use arms in defense of hearth and home." Hightower  693 F.3d at 73. (quoting Heller at  .
[2] In Heller, the Court only went so far as to define the  individual right under the Second Amendment to possess a firearm (1) by  law biding responsible citizens,  2) in the home. Heller  554 U.S. at 635.  The licenses granted to both Plaintiffs provided for use and self protection in the home and actually extends that right by allowing use outside the home for targeting and hunting purposes.[3]

Except for the outright denial of an application, all other restrictions in Massachusetts, allow the right of self -protection in the home.  Neither Plaintiffs' applications focused on their need for personal protection and/or self-defense and nothing more. Their statements on these applications seek the license for anything more than self- protection.  " [A]s we move outside the home, firearm rights have always been more limited, because public safety interests often

---

[2] In fact, the license granted to the Plaintiffs extends in a limited way their ability to carry the gun outside the home for the purpose of practice and appreciation of the weapon.

[3] **Target and Hunting--** Restricts possession to personal protection in the home; use for the purposes of recreational shooting or competition ; for use in the lawful pursuit of game, and other animals and birds; for purposes of collecting ; and includes travel to and from the activity location.

outweigh individual interests in self-defense." United States v. Masciandaro  638 F.3d 458, 470 (4th Cir.), cert. denied , 132 S. Ct  756 (2011).

The purpose of the Local Licensing Authority review is to issue licenses which balances the individual's right to bear arms and the legitimate interest in protecting public safety and preventing crime.  See Schenck v. Pro Choice Network of W.N.Y. 519 U.S. 357, 376 (1997) (protecting public safety and preventing crime are substantial and important government interests) ; U.S. v. Salerno  481 U.S. 739, 750 (1987) (preventing crime is a compelling government interest.). Defendant Albertelli granted the Plaintiffs a license to carry in the home for personal protection and a limited license outside the home allowing them to practice and other uses. Neither Plaintiff in their applications provided reason for seeking the use outside the home. The Defendant's decision is contemplated by the statutory scheme and the restrictions issued are not in violation of the Second Amendment.

    In order to sustain an action pursuant to 42 U.S.C. Section 1983 claim Plaintiffs must prove (1) the conduct complained of was carried out under the color of state law; and (2) the Defendant's actions deprived the Plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States. Collins v. Nuzzo , 24 F3d. 246,250 (1st. Cir. 2001). In Hightower, the Court held that the issuance of a restricted license does not amount to a violation of the Second Amendment, as the holder (s) as here, would have adequate means  to protect themselves in their home with a firearm. Hightower v. City of Boston 693 F.3d 61, 72 and FN. 8 (1st Cir. 2012)

For the reasons set forth above, neither Plaintiff can define any harm or injury from the actions of the Defendant Albertelli  or that the limitations placed upon the licensing of

individuals under G.L. 140 Section 131 were in any way in violation of the protections provided by the Second Amendment.

Plaintiffs have alleged no factual allegations here to raise the "a right to relief" and their argument as to the violation of the Second Amendment misstates the Massachusetts law. Further under the standard of review for either a judgment on the pleading or summary judgment have not been met and the Defendant is entitled to Judgment in his favor.

Respectfully submitted,
Ken Albertelli, Chief of Police
Town of Winchester
By his attorney,

Wade Welch, Esquire BBO# 522160
Welch & Donohoe
655 Summer Street
Boston, MA 02210
617-428-0222
Dated: July 7, 2016                wwelch@welchdonohoe.com

CERTIFICATE OF LOCAL RULE 7 CONFERENCE

I, Defendant's Counsel, hereby that I conferred with Plaintiffs' Counsel in a good faith attempt to resolve or narrow the issues presented in this motion.

Wade M. Welch, Esquire

## CERTIFICATE OF SERVICE

The undersigned member of the Bar certifies that a copy of the foregoing document was served by first class mail or by electronic mail as shown on July 7, 2016.

Wade M. Welch

Kreg Espinola
Burke, Espinola & Van Colen
15 Hamilton Street
New Bedford, MA 02740
espinolak@aol.com

Patrick M. Groulx
Goldman LLP
321 Columbus Avenue
Boston, MA 02116
617-859-8966
617-859-8903 (fax)
Patrick@grolmanllp.com

David D. Jensen
David Jensen PLLC
111 John Street, Suite 420
New York, NY 10038
212-380-6615
david@djensenpllc.com

Kenneth J. Rosetti, Esq.
City of Lowell Law Department
375 Merrimack Street
Lowell, MA 01852
978-674-4050
978-453-1510 (fax)
krossetti@lowellma.gov

# EXHIBIT LIST

Exhibit 1    Batty License Application

Exhibit 2    Batty Original License

Exhibit 3    Batty Deposition p. 1,12,13,,22,23,25

Exhibit 4    Winchester December 2014 letter to Plaintiffs

Exhibit 5    Batty Corrected License

Exhibit 6    Russo License Application

Exhibit 7    Russo Original License

Exhibit 8    Russo Corrected License

Exhibit 9    Russo Depos. p. 8,15

Exhibit 10   Albertelli Depos. p. 59