UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEAN BATTY; EDWARD RUSSO; MATT WOLF; PAUL P. BARNETT; CRAIG VACCA; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> KEN ALBERTELLI, in his official Capacity as Chief of the Winchester Police Department; and WILLIAM TAYLOR, in his Official Capacity as Superintendent of the Lowell Police Department, <br><br> Defendants. | CIVIL ACTION NO. 1:15-cv-10238-FDS |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Now come the Plaintiffs Jean Batty, Edward Russo, and Commonwealth Second Amendment, Inc., pursuant to Rule 56(c) and Local Rule 56.1, who hereby submit there is no genuine issue to be tried as to the following facts:

1. Plaintiff Jean Batty is a married mother of three who now lives in Scituate.

    [Declaration of Jean Batty ("Batty Dec.") ¶¶ 2, 4]

2. Plaintiff Jean Batty works for MassHealth as a Disability Accommodation Ombudsman.

    [Batty Dec. ¶ 3]

3. Plaintiff Jean Batty applied for an LTC from Defendant Chief Albertelli on March 24, 2013, when she lived in Winchester.

    [Batty Dec. ¶ 4]

4. Plaintiff Jean Batty met all applicable requirements for issuance of an LTC.

   [Batty Dec. ¶ 7]

5. On the portion of the application form that requested her "Reason(s) for requesting the issuance of a card or license," Plaintiff Jean Batty wrote, "All lawful purposes. Personal protection and self defense."

   [Batty Dec. ¶¶ 6, 8 & ex. 1]

6. Defendant issued Plaintiff Jean Batty a "Class A" LTC that carried no restrictions on June 5, 2013.

   [Batty Dec. ¶ 9 & ex. 2]

7. Plaintiff Edward Russo is a married and retired man with 3 children and 8 grandchildren.

   [Declaration of Edward Russo ("Russo Dec.") ¶ 2]

8. Plaintiff Edward Russo currently lives in South Yarmouth, Massachusetts, but he previously lived in Winchester, Massachusetts.

   [Russo Dec. ¶ 3]

9. Plaintiff Edward Russo applied for an LTC from Defendant on March 20, 2013, when he lived in Winchester.

   [Russo Dec. ¶ 4]

10. Plaintiff Edward Russo met all applicable requirements for issuance of an LTC.

    [Russo Dec. ¶ 6]

11. On the portion of the application form that requested his "Reason(s) for requesting the issuance of a card or license," Plaintiff Edward Russo wrote, "all lawful purpose personal protection."

    [Russo Dec. ¶¶ 5, 7 & ex. 1]

12. Defendant issued Plaintiff Edward Russo a "Class A" LTC that carried no restrictions on June 5, 2013.

    [Russo Dec. ¶ 8 & ex. 2]

13. In approximately January 2015, a representative of Defendant contacted both Plaintiffs Jean Batty and Edward Russo and advised them that their LTC's has been "issued without the approved Target and Hunting Restriction as originally directed by the Chief of Police."

    [Batty Dec. ¶¶ 10-12 & ex. 3; Russo Dec. ¶¶ 9-10 & ex. 3]

14. Defendant's representative directed both Plaintiffs Jean Batty and Edward Russo to return their current, unrestricted LTC's and to pick up LTC's with "Target & Hunting" restrictions.

    [Batty Dec. ¶¶ 11-12 & ex. 3; Russo Dec. ¶¶ 9-10 & ex. 3]

15. Plaintiff Jean Batty and her husband submitted a letter to Defendant Chief Albertelli requesting that he re-issue them unrestricted LTC's on January 21, 2015.

    [Batty Dec. ¶ 13 & ex. 4]

16. Plaintiff Jean Batty and her husband advised Chief Albertelli of specific reasons that both had to be concerned for our safety. Among other things, Plaintiff Jean Batty has concerns with specific distraught and/or confrontational individuals that she has encountered through her work at MassHealth.

    [Batty Dec. ¶¶ 13-14 & ex. 4]

17. Sometime after January 21, 2015, Defendant denied Plaintiff Jean Batty's request to re-issue her an unrestricted LTC.

    [Batty Dec. ¶ 15]

18. Plaintiff Jean Batty's husband exchanged her unrestricted LTC for an LTC with a "Target & Hunting" restriction on January 26, 2015.

   [Batty Dec. ¶ 16 & ex. 5]

19. Plaintiff Edward Russo exchanged his unrestricted LTC for an LTC with a "Target & Hunting" restriction on February 5, 2015.

   [Russo Dec. ¶ 11 & ex. 4]

20. Both Plaintiffs Jean Batty and Edward Russo sought and continue to seek licenses that would allow them the option to carry handguns for personal protection while away from their homes.

   [Batty Dec. ¶¶ 17, 20; Russo Dec. ¶¶ 12-13]

21. Both Plaintiffs Jean Batty and Edward Russo would complete reasonable additional training in order to obtain unrestricted LTC's.

   [Batty Dec. ¶ 21; Russo Dec. ¶ 15]

22. Defendant Chief Albertelli is the "licensing officer" that M.G.L. c. 140, § 131 vests with authority to issue LTC's in the Town of Winchester.

   [Amended Complaint (Doc. No. 9) ¶ 11; Answer (Doc. No. 17) ¶ 11; see also Deposition of Kenneth Albertelli ("Albertelli Dep.") (Exhibit 1) p. 6:13-17]

23. Defendant's current practice is to personally review each LTC application and determine whether to impose a restriction.

   [Albertelli Dep. (Exhibit 1) pp. 20:7-21:5]

24. Since January 1, 2014, Defendant has imposed the "Target & Hunting" restriction and has also imposed the combined restrictions of "Employment" and either "Target & Hunting" or "Sporting."

[Albtertelli Dep. (Exhibit 1) p. 25:16-25; Defendant's Responses to Interrogatories ("Interrogatory Responses") (Exhibit 2) ¶ 3; E-Mail from W. Welch ("E-Mail") (Exhibit 3)]

25. Defendant first adopted a written firearms licensing policy in February 2016.

    [Albtertelli Dep. (Exhibit 1) pp. 54:20-55:7]

26. Under Defendant's written policy, a "Target and Hunting" restriction allows target shooting and hunting, and also allows "personal protection in the home," collecting, and travel to and from activity locations.

    [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Winchester Police Department Firearms Licensing Policy and Procedures ("Licensing Policy") (Exhibit 4) p. 7]

27. Under Defendant's written policy, a "Sporting" restriction allows possession during various outdoor activities and, similarly, "personal protection in the home," collecting, and travel to activity locations.

    [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Licensing Policy (Exhibit 4) p. 7]

28. Under Defendant's written policy, an "Employment" restriction "[r]estricts possession to [a] business owner engaged in business activities or to an employee while engaged in work related activities, and maintaining proficiency, where the employer requires carrying a firearm."

    [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Licensing Policy (Exhibit 4) p. 7]

29. From January 1, 2014 through March 23, 2016, Defendant issued a total of 252 LTC's, consisting of 140 new licenses and 112 renewals.

    [Interrogatory Responses (Exhibit 2) ¶ 2; Affidavit of Michaela Dunne ("Dunne Aff.") ¶¶ 5-7 & ex. 1 at pp. 27-34]

30. Among the new licenses issued in this period, Defendant issued unrestricted LTC's to only 13 who were not law enforcement officers.

    [Interrogatory Responses (Exhibit 2) ¶ 5]

31. Among the new licenses issued in this period, Defendant imposed a "Target & Hunting" restriction on 94 LTC's.

    [Dunne Aff. ¶¶ 5-7 & ex. 1 at pp. 27-34]

32. Among the new licenses issued in this period, Defendant imposed the restrictions of "Employment" and either "Target & Hunting" or "Sporting" restriction on 31 LTC's.

    [Dunne Aff. ¶¶ 5-7 & ex. 1 at pp. 27-34; see also Albtertelli Dep. (Exhibit 1) p. 25:16-25; E-Mail from W. Welch (Exhibit 3)]

33. Among the renewal licenses issued in this period, Defendant issued 106 LTC's without restriction.

    [Dunne Aff. ¶¶ 5-7 & ex. 1 at pp. 27-34]

34. Among the renewal licenses issued in this period, Defendant issued five with "Target & Hunting" restrictions.

    [Dunne Aff. ¶¶ 5-7 & ex. 1 at pp. 27-34]

35. Among the renewal licenses issued in this period, Defendant issued one with combined "Employment" and either "Target & Hunting" or "Sporting" restrictions.

    [Dunne Aff. ¶¶ 5-7 & ex. 1 at pp. 27-34; see also [Albtertelli Dep. (Exhibit 1) p. 25:16-25; E-Mail from W. Welch (Exhibit 3)]

36. The only references in Defendant's written policy that have any apparent bearing on Defendant's to impose restrictions on LTC's: (a) recite that "the statute grants to the Chief of Police as local licensing authority the discretion to place restrictions relative to

the possession, use and carrying of a firearm as he/she deems proper"; (b) state that "[e]very [LTC] will specifically state the use and purpose;" and (c) provide that for new applicants, "a detailed description of the purpose for the application must be provided. ('All lawful purposes' is not sufficiently specific)."

[Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Licensing Policy (Exhibit 4) pp. 4, 7]

37. Defendant testified that a person seeking an unrestricted LTC must provide a "reason to fear," rather than a "feeling of fear."

[Albtertelli Dep. (Exhibit 1) p. 33:15-24]

38. Defendant testified that examples of people with an adequate "reason to fear" include documented victims of assault and harassment, as well as members of occupations that involve a "constant" risk of danger.

[Albtertelli Dep. (Exhibit 1) pp. 33:25-34:23]

39. Defendant testified that there "could" also be other adequate "reasons to fear" aside from occupation of past victimization.

[Albtertelli Dep. (Exhibit 1) p. 35:8-15]

40. When asked to identify "considerations" or "criteria" that would justify an unrestricted LTC, Defendant testified only that applicants needed to "me[e]t the criteria of the law." [Albertelli Dep. (Exhibit 1) p. 63:7-10 ("Q. Well, what kind of considerations would be likely to result in me getting the unrestricted LTC? A. If they met the criteria of the law."); id. pp. 66:10-17 ("Q. I guess what I'm having trouble understanding is exactly what the criteria actually is. Is there anything else you can tell me to give me more guidance on that? MR. WELCH: Objection. Asked and answered 25 times. A. I have the same answer, Counselor. If they meet the criteria. That's all I can apply.")]

41. Defendant testified he would not provide applicants with "advice" a regarding how to most likely obtain an unrestricted LTC.

    [Albertelli Dep. (Exhibit 1) pp. 62:22-63:6]

42. There are no written criteria that govern Defendant's decision to impose a restriction.

    [Albtertelli Dep. (Exhibit 1) pp. 65:3-6, 66:10-67:13]

43. Defendant testified that he would not be more likely to issue an unrestricted LTC to someone who had been licensed in prior state of residence.

    [Albtertelli Dep. (Exhibit 1) pp. 65:23-66:4]

44. Defendant testified that while training would be "a consideration," it was not part of "the criteria" to obtain an unrestricted LTC.

    [Albtertelli Dep. (Exhibit 1) p. 66:5-9]

45. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized in Massachusetts with its principal place of business in Natick, Massachusetts.

    [Declaration of Thomas Bolioli ("Bolioli Dec.") ¶ 3]

46. The purposes of Comm2A include education, research, publishing and legal action focusing on the constitutional right of the people to possess and carry firearms.

    [Bolioli Dec. ¶ 3]

47. Comm2A's membership includes individuals who hold restricted LTC's issued by the Winchester Police Department

    [Bolioli Dec. ¶ 4]

48. Both Jean Batty and Edward Russo (plaintiffs in this action) are members of Comm2A.

    [Bolioli Dec. ¶ 4]

49. Comm2A's membership also includes individuals who have residences or places of business in Winchester who have refrained from applying for LTC's out of their understanding that Winchester Police Chief Ken Albertelli would issue them LTC's that bear restrictions.

    [Bolioli Dec. ¶ 5]

50. Both members of Comm2A and members of the public contact Comm2A on a regular basis for assistance with Massachusetts firearms laws and licensing, and particularly regarding the imposition of "Target & Hunting" restrictions. At least four individuals have contacted Comm2A regarding restrictions that the Winchester Police Department imposed on their LTC's.

    [Bolioli Dec. ¶ 6]

51. Comm2A expends organizational resources in responding to requests for assistance or information regarding LTC restrictions, such as time that Comm2A representatives spending speaking to individuals, funds that Comm2A expends to hire lawyers, and time that Comm2A representatives spends referring individuals to attorneys or others who may be able to provide more assistance or information.

    [Bolioli Dec. ¶ 7]

52. The time, energy, and resources that Comm2A spends responding to and addressing requests for assistance that pertain to the imposition of restrictions on LTC's, diminishes the time, energy, and resources that Comm2A has available to pursue other organizational priorities and forces Comm2A to change those priorities.

    [Bolioli Dec. ¶ 8]

Dated: July 8, 2016

>Respectfully submitted,
>
>THE PLAINTIFFS,
>
>By their attorneys,
>
>_____
>David D. Jensen, Esq.
>Admitted *Pro Hac Vice*
>DAVID JENSEN PLLC
>111 John Street, Suite 420
>New York, New York 10038
>Tel: 212.380.6615
>Fax: 917.591.1318
>david@djensenpllc.com
>
>Patrick M. Groulx, Esq.
>BBO No. 673394
>Grolman LLP
>321 Columbus Avenue
>Boston, Massachusetts 02116
>Tel: 617.859.8966
>Fax: 617.859.8903
>patrick@grolmanllp.com
>
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 8 July 2016.

>  /s/ David D. Jensen
>David D. Jensen, Esq.