UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| Jean Batty; Edward Russo; Mary | ) | |
| Learning; Ken Trudell; Matt Wolf; | ) | |
| Paul P. Barnett; Craig Vacca; David | ) | |
| Goldman; Janele Goldman; and | ) | |
| Commonwealth Second Amendment, | ) | |
| Inc., | ) | CIVIL ACTION NO. |
| Plaintiffs. | ) | 1:15-cv-10238 |
| | ) | |
| | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| Ken Albertelli, in his official Capacity as | ) | |
| Chief of the Winchester Police Department; | ) | |
| Richard C. Grimes, in his Official Capacity | ) | |
| As Chief of the Weymouth Police | ) | |
| Department; William Taylor, in his Official | ) | |
| Capacity as Superintendent of the Lowell | ) | |
| Police Department; and David A. | ) | |
| Provencher, in his Official Capacity as the | ) | |
| Chief of the New Bedford Police | ) | |
| Department, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANT KEN ALBERTELLI'S OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In their complaint and reiterated in their Motion for Summary Judgment, the Plaintiffs

contend that Defendant Albertelli's policy or practice violated the Plaintiffs Second Amendment

right to keep and bear arms when Defendant Albertelli issued Plaintiff Batty and Plaintiff Russo

licenses to carry firearms with restrictions limiting their use within the home for self protection and for use outside the home for targeting and hunting.

The uncontroverted facts in this case and the law as recently ruled on by the United States Supreme Court  support the Defendant's argument that there is no violation of the Second Amendment either by the policy which allowed the Defendant to issue licenses with restrictions or the Defendant's implementation of that policy as it related to the Plaintiffs.

The uncontroverted facts that support Defendant's argument include the following:

- The Plaintiffs applied for a license to carry a firearm in the Town of Winchester;

- The Defendant found these two applicants to be "suitable" applicants and issued them licenses pursuant to MGL Chapter 140 Section 131;

- The statutory scheme allows the Winchester Chief as the local licensing authority to issue licenses with the discretion to restrict the use of the firearms.

- The scheme provides the Plaintiffs with the right to petition for review of any restriction placed on the licenses if they were considered "aggrieved" by the Defendant's actions;

- The licenses that were issued comported with the protections provided by the Second Amendment as defined by the United States Supreme Court in District of Columbia v. Heller and McDonald v. City of Chicago as applied to the states.


Defendant opposes Plaintiffs' Motion for Summary Judgment. As part of this opposition, the Defendant includes all arguments made in his Memorandum in Support of Defendant's Motion for Summary Judgment as well as the argument set forth below.

DEFENDANT'S OBJECTION TO PLAINTIFFS
STATEMENT OF MATERIAL FACTS

Defendant objects to inclusion of the following statements as material facts where 1)

there is no genuine issue to be tried, 2) the statements are not material, 3) the facts are misstated

or contested. (identified by paragraph, cites as presented):

15. Plaintiff Jean Batty and her husband submitted a letter to Defendant Chief Albertelli
requesting that he re-issue them unrestricted LTCs on January 21, 2015. [Batty Dec. ¶ 13 & ex.
4].

Objection: There is only one statement submitted by Plaintiff Batty under oath during the
application process and to be considered by the court. That statement was the application. The
letter referenced by Plaintiff was authored by Mr. Batty only. Mr. Batty was also an applicant for
an LTC and was awarded the same, but did not appeal the Chief's Decision. Mr. Batty's letter is
not material to the issue before the Court.

16. Plaintiff Jean Batty and her husband advised Chief Albertelli of specific reasons that both had
to be concerned for our safety.  Among other things, Plaintiff Jean Batty has concerns with
specific distraught and/or confrontational individuals that she has encountered through her work
at MassHealth. [Batty Dec. ¶¶ 13-14 & ex. 4]

Objection: There is only one statement submitted by Plaintiff Batty under oath during the
application process and to be considered by the court. That statement was the application. The
letter referenced by Plaintiff was authored by Mr. Batty only. Mr. Batty was also an applicant for
an LTC and was awarded the same, but did not appeal the Chief's Decision. Mr. Batty's letter is
not material to the issue before the Court.

17. Sometime after January 21, 2015, Defendant denied Plaintiff Jean Batty's request to reissue
her an unrestricted LTC. [Batty Dec. ¶ 15]

Objection: There is only one statement submitted by Plaintiff Batty under oath during the
application process and to be considered by the court. That statement was the application. The
letter referenced by Plaintiff was authored by Mr. Batty only. Mr. Batty was also an applicant for
an LTC and was awarded the same, but did not appeal the Chief's Decision. Mr. Batty's letter is
not material to the issue before the Court.

20. Both Plaintiffs Jean Batty and Edward Russo sought and continue to seek licenses that would
allow them the option to carry handguns for personal protection while away from their homes.
[Batty Dec. ¶¶ 17, 20; Russo Dec. ¶¶ 12-13]

Objection: The record indicates neither Plaintiff completed the application process. Neither
declaration by the Plaintiffs support the statement in that it was clear from the declaration only
that the Plaintiffs "desired" not "sought" and continue to seek the licenses.

21. Both Plaintiffs Jean Batty and Edward Russo would complete reasonable additional training
in order to obtain unrestricted LTCs.
[Batty Dec. ¶ 21; Russo Dec. ¶ 15]

Objection: These facts are not material to the issues presented in the Memorandum in Support of the Motion for Summary Judgment.

25. Defendant first adopted a written firearms licensing policy in February 2016. [Albtertelli Dep. (Exhibit 1) pp. 54:20-55:7]

Objection: These facts are not material to the issues presented in the Memorandum in Support of the Motion for Summary Judgment as the policy was published in draft outside the dates relevant to the issuance of the licenses.

26. Under Defendant's written policy, a "Target and Hunting" restriction allows target shooting and hunting, and also allows "personal protection in the home," collecting, and travel to and from activity locations. [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Winchester Police Department Firearms Licensing Policy and Procedures ("Licensing Policy") (Exhibit 4) p. 7]

Objection: The licenses were issued in 2013. The written policy was published in draft in February 2016 and is thus outside of the relevant period for consideration in this case and is not material.

27. Under Defendant's written policy, a "Sporting" restriction allows possession during various outdoor activities and, similarly, "personal protection in the home," collecting, and travel to activity locations. [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Licensing Policy (Exhibit 4) p. 7]

Objection: The licenses were issued in 2013. The written policy was published in draft in February 2016 and is thus outside of the relevant period for consideration in this case and is not material.

28. Under Defendant's written policy, an "Employment" restriction "[r]estricts possession to [a] business owner engaged in business activities or to an employee while engaged in work related activities, and maintaining proficiency, where the employer requires carrying a firearm." [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Licensing Policy (Exhibit 4) p. 7]

Objection: The licenses were issued in 2013. The written policy was published in draft in February 2016 and is thus outside of the relevant period for consideration in this case and is not material.

36. The only references in Defendant's written policy that have any apparent bearing on Defendant's decision to impose restrictions on LTCs: (a) recite that "the statute grants to the Chief of Police as local licensing authority the discretion to place restrictions relative to the possession, use and carrying of a firearm as he/she deems proper"; (b) state that "[e]very [LTC] will specifically state the use and purpose;" and (c) provide that for new applicants, "a detailed description of the purpose for the application must be provided. ('All lawful purposes' is not sufficiently specific)." [Albtertelli Dep. (Exhibit 1) pp. 17:15-18:5; Licensing Policy (Exhibit 4) pp. 4, 7]

Objection: The licenses were issued in 2013. The written policy was published in draft in February 2016 and is thus outside of the relevant period for consideration in this case and is not material.

45. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized in Massachusetts with its principal place of business in Natick, Massachusetts. [Declaration of Thomas Bolioli ("Bolioli Dec.") ¶ 3]

4

Objection: This statement is not material to the issues in this case and should be stricken.

46. The purposes of Comm2A include education, research, publishing and legal action focusing on the constitutional right of the people to possess and carry firearms.
[Bolioli Dec. ¶ 3] .

Objection: This statement is not material to the issues in this case and should be stricken.

46.  Comm2A's membership includes individuals who hold restricted LTCs issued by the Winchester Police Department.  [Bolioli Dec. ¶ 4]

Objection: This statement is not material to the issues in this case and should be stricken.

48.Both Jean Batty and Edward Russo (plaintiffs in this action) are members of Comm2A.
[Bolioli Dec. ¶ 4]

Objection: Plaintiff Batty's own statement disputes the fact that she ever joined Comm. 2A (DO Exhibit 2 Batty Deposition p.21 l. 14-16.). Plaintiff Russo never stated that he joined Comm. 2A, only that he authorized them to sue. (DO Exhibit 3 Russo Depos. p. 20 l. 1-3)[1]

49. Comm2A's membership also includes individuals who have residences or places of business in Winchester who have refrained from applying for LTCs out of their understanding that Winchester Police Chief Ken Albertelli would issue them LTCs that bear restrictions. [Bolioli Dec. ¶ 5]

Objection: This statement is not material to the issues in this case and should be stricken.

49. Both members of Comm2A and members of the public contact Comm2A on a regular basis for assistance with Massachusetts firearms laws and licensing, and particularly regarding the imposition of "Target & Hunting" restrictions.  At least four individuals have contacted Comm2A regarding restrictions that the Winchester Police Department imposed on their LTCs.
[Bolioli Dec. ¶ 6]

Objection: This statement is not material to the issues in this case and should be stricken.

50.Comm2A expends organizational resources in responding to requests for assistance or information regarding LTC restrictions, such as time that Comm2A representatives spend speaking to individuals and referring individuals to attorneys or others who may be able to provide more assistance or information, and funds that Comm2A itself expends to hire lawyers. [Bolioli Dec. ¶ 7]

Objection: This statement is not material to the issues in this case and should be stricken.

51.The time, energy, and resources that Comm2A spends responding to and addressing requests for assistance that pertain to the imposition of restrictions on LTC's, diminishes the time, energy, and resources that Comm2A has available to pursue other organizational priorities and forces Comm2A to change those priorities.  [Bolioli Dec. ¶ 8]

Objection: This statement is not material to the issues in this case and should be stricken

---

[1] DO connotes the exhibits attached to this opposition.

**ARGUMENT**

### NEITHER THE STATUTORY SCHEME NOR DEFENDANT'S IMPLEMENTATION OF THE POLICY IMPLICATES THE SECOND AMENDMENT RIGHTS OF THE PLAINTIFFS

The Plaintiffs Batty and Russo have filed the complaint in this case and have alleged in two separate counts that the Defendant has issued Plaintiffs licenses that prohibit them from carrying and using handguns for the purpose of self-defense and therefore deprive the Plaintiffs of their right to keep and bear arms, infringing on their Second Amendment rights. In addition Count II of Plaintiffs' complaint alleges that the Defendant's decision often turns on arbitrary considerations, such as residing on the correct side of a boundary line, having excess cash, or having a business in another locality that issues unrestricted LTCs, and that such arbitrary considerations also infringes upon the Plaintiffs' Second Amendment right to keep and bear arms.

Neither Plaintiffs in fact meet the statutory requirement in their applications by indicating any unique reason to distinguish their applications from the general public that would provide a reason for seeking an unrestricted license. (DO Exhibit 1 Albertelli Deposition p.33 l. 8-24) In fact, their own deposition testimonies reflect that their reasons were not unique and were not based on any specific personal circumstance or experience. (DO Exhibit 2 Batty Deposition p.22 l. 18 –p. 23 l.13; (DO Exhibit 3 Russo Deposition p. 8 l. 19-23). In addition, neither plaintiff in fact completed the statutory procedure that provides these Plaintiffs with the opportunity to challenge the Defendant's decision making as it relates to the restrictions places upon their licenses. They made no petition to the local District Court as provided for in MGL 140 section 131. As explained in Defendant's sworn testimony, by failing to provide a more personal,

specific reason for asking for the unrestricted license, the criteria of the law has not been met. The record indicates that neither Plaintiff  provided a sufficient basis for their request and the Defendant was well within his authority to issue the license with restrictions.

In their argument for summary judgment, Plaintiffs citing District of Columbia v. Heller and McDonald v. Chicago argue that these cases establish both that the right "to keep and bear arms" protects the right "to possess and carry weapons in case of confrontation" and that "self defense is the *central component* of the right itself". The Plaintiffs argue that the core purpose of the Second Amendment is personal protection. (Memorandum 7) However, as is clear from both Heller and McDonald , the Court has not recognized the right to carry a firearm in public as a "core right" guaranteed by the Constitution. In fact, the Court differentiated between the fundamental right to possess a firearm inside one's home for self-defense and the carrying of a firearm on a public street or in public areas, due to the dangers posed to the public in the latter circumstances. Heller at 626-627 .

Neither the Commonwealth's statutory scheme as written in Chapter 140 Section 131 nor the decision by the Defendant to issue the license to the Plaintiffs with restrictions either expressly or implicitly impacts an individual's right in Massachusetts to bear arms in self-defense in his or her home.  In McDonald, the Supreme Court clearly stated its understanding of the exact nature of the individual right it recognized when it stated "in Heller, we held that the Second Amendment protects the right to possess a handgun in the home for the purposes of self defense." McDonald 130 S.Ct. at 3050. Plaintiffs' attempt to extend the Second Amendment right that the Supreme Court addressed to other purposes outside the home are without foundation or support in the Supreme Court Cases. Neither case precluded the states from regulating the licensing or possession of firearms. A review of cases decided after Heller and

McDonald indicates that the right recognized by the Supreme Court iss limited to the right to possess a firearm inside an individual's home for self-defense. *See* United States v. Chester , 628 F.3d 673,676 (4th Cir. 2010) ; United States v, Skoien 614 F.3d 638, 639-640 (7th Cir. 2010); United States v. Mazzarella 614 F3d 85,92 (3d Cir. 2010);  United States v. Rene E  583 F3d. 8, 12-13 (1st Cir. 2009); Hightower v. City of Boston 693 F3d 61,73  (1st Cir. 2012); Pineiro v. Gemme 937 F.Supp. 2d 161 (D.MA 2013).  At least one recent case specifically declined to extend the Second Amendment right to possess firearms in public.  Peruta v. City of San Diego No. 10-56971 (9th Cir. 2016).

None of the allegations or facts presented by the Plaintiffs demonstrate a violation of Plaintiffs'  Second Amendment rights by the Defendant. As clearly indicated by the statistics provided by the Plaintiffs themselves, the Defendant has not engaged in any pattern of arbitrary or directed differential treatment as applied to these two Plaintiffs. (See Plaintiffs Brief at page 5). As to new applicants, 67% were granted a license with the Target and Hunting restriction and 22% expanded the Hunting and Targeting to include Employment use approval.

The second prong of the analysis requires an Applicant to distinguish him/herself from the general public. Pineiro  at 167. Here again, in their applications, neither plaintiff attempted to distinguish their reason for the license from the general public by providing a generic all lawful purposes, self defense or personal protection reason. In fact in their depositions, neither Plaintiff indicated any personal situation which would satisfy the requirement. Batty, in her deposition, cited 9.11.01 and the Boston Marathon bombings and general increase in terrorism as her basis for seeking the license.  (DO Exhibit 2 Batty depos. P. 22 l. 18- p.23 l.13). Russo in his deposition indicated he had no particular reason for seeking the license. (DO Exhibit 3 Russo Depos. P. 8  l.19-23).

The restrictions in place promote the important goal of public safety which is a legitimate and well established goal. Heller v. District of Columbia 698 F.Supp. 2d  191 (D.C. D.C. 2011). The Massachusetts statutes are substantially related to that goal in the approved review process. It is appropriate for the licensing authority to issue a license with a sporting or target restriction in response to applicants' request for an unrestricted license for self defense. Ruggiero v. Police Com'r of Boston 18 Mass. App. Ct. 256,257 (1984).

Plaintiffs' argument that the Defendant's action in implementing the statutory scheme was a violation of the Second Amendment in that the decision denied Plaintiff's their Second Amendment rights to self-protection is neither supported by the material facts nor based in the law as defined by the United States Supreme Court in Heller and McDonald  and held in recent cases by the Ninth Circuit in Peruta v. County of San Diego,, No. 10-56971 and by the First Circuit in Hightower v. Boston and this Court previously in Pineiro v. Gemme.

For the reasons set forth at length in Defendant's Memorandum in Support of his Motion for Summary Judgement as well as the oppositions argument set forth above, the Plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,
Ken Albertelli,
Chief of Police, Town of Winchester,
By his attorney,

/s/ Wade M. Welch  BBO#
Wade M. Welch, Esq.
Welch & Donohoe, LLP
655 Summer Street, Suite 203
Boston, MA 02210

**Certificate of Service**

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing and

paper copies will be sent to those indicated as non-registered participants on July 21, 2016.

/s/ Wade M. Welch

Wade M. Welch

Page 1

 1                 UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MASSACHUSETTS

 3      - - - - - - - - - - - - - - - - - - x

 4      In re:

 5      JEAN BATTY; EDWARD RUSSO; MARY
        LEARNING; KEN TRUDELL; MATT WOLF;
 6      PAUL P. BARNETT; CRAIG VACCA; DAVID
        GOLDMAN; JANELE GOLDMAN; and
 7      COMMONWEALTH SECOND AMENDMENT, INC.

 8                   Plaintiffs        Civil Action
               v.                      No. 1:14-cv-10238
 9

10      KEN ALBERTELLI, IN HIS OFFICIAL
        CAPACITY AS CHIEF OF THE WINCHESTER
11      POLICE DEPARTMENT; RICHARD C. GRIMES,
        IN HIS OFFICIAL CAPACITY AS CHIEF
12      OF THE WEYMOUTH POLICE DEPARTMENT;
        WILLIAM TAYLOR, IN HIS OFFICIAL CAPACITY
13      AS SUPERINTENDENT OF THE LOWELL POLICE
        DEPARTMENT; AND DAVID A. PROVENCHER, IN
14      HIS OFFICIAL CAPACITY AS THE CHIEF OF THE
        NEW BEDFORD POLICE DEPARTMENT
15
                      Defendants
16      - - - - - - - - - - - - - - - - - - x

17

18            DEPOSITION of KENNETH C. ALBERTELLI
                  Wednesday, May 11, 2016
19                     11:58 a.m.
                   Welch & Donohoe, LLP
20                    655 Summer Street
                   Boston, Massachusetts
21             Michelle Keegan, Court Reporter

22      WILLIAMS & ASSOCIATES COURT REPORTERS
                Professional Court Reporters
23                   177 Beach Avenue
                Hull, Massachusetts 02045
24                    781-760-6619

25

EXHIBIT

DO  1

Page 33

1   reason then I'll issue a sporting with target and

2   hunting.  I don't usually issue -- I don't issue

3   either a straight employment or straight

4   supporting because it doesn't make any sense to me

5   if they can't target and practice.  So I always

6   combine those.  Those are the others.  But they --

7   it depends what they tell me.

8       Q.   What if somebody asked you specifically

9   for an unrestricted LTC?

10      A.   They have to give me a reason.

11      Q.   Suppose they say protection of themselves

12  and their family.

13      A.   It doesn't meet the requirements of the

14  law.

15      Q.   So by your understanding, what are those

16  requirements?

17      A.   They have to demonstrate a reason to fear

18  to get an unrestricted license.

19      Q.   A reason to fear?

20      A.   I have to have a reason.  Not a feeling of

21  fear; I need a reason to fear.  Something had to

22  happen in their life that they fear for their

23  safety, to have an unrestricted license at all

24  times because they're always in fear.

25      Q.   So if someone's objective was to get an

1    unrestricted LTC, what kind of reasons would be

2    adequate?

3        A.   Depends what they tell me.

4        Q.   Can you give me an example of something

5    that ought to be adequate?

6        A.   They've been assaulted.  There's some sort

7    of documented assault.  They've been harassed.

8    Something along those lines to demonstrate that

9    they have a reason to fear, not a feeling.

10       Q.   What about if someone was in a particular

11   occupation?

12       A.   Depends.

13       Q.   Can you elaborate on what it would depend

14   on?

15       A.   Some professions are inherently dangerous,

16   but it would depend if it was for employment

17   reasons only when they're doing their job.  Some

18   professions are inherently dangerous all the time.

19   I'm actually quite, for some reason or another,

20   sensitive to lawyers because I think they deal

21   with the element of people that police are dealing

22   with a lot, so they could be in danger all the

23   time.

24            MR. WELCH:  Could you keep your voice up,

25   Chief?  I'm having a hard time hearing.

1     A.   Can you hear me?

2     Q.   I can hear you, but you're looking at me.

3     A.   So there are certain professions that I

4  think can be dangerous just because of the

5  profession.  It all depends.  That's the only one

6  I can think of right now other than law

7  enforcement, something like that.

8     Q.  So other than someone's occupation or

9  their status as a past victim of a crime, are

10  there any other considerations that would be

11  pertinent to whether you would issue them an

12  unrestricted LTC?

13     A.  Could be.  Depends what they tell me.  I

14  ask them to be very specific so that I can

15  evaluate it.  That's my job.

16     Q.  And would you be more likely to accept a

17  reason or reasons that someone gave if they were

18  renewing as opposed to applying for the first

19  time?

20     A.  Ask the question again.  Would I be more

21  willing to do --

22     Q.  Would you be more apt to find a reason or

23  a justification acceptable if someone was renewing

24  an LTC after the first five to six years as

25  opposed to just applying for a new one?

Page 1

1            UNITED STATES DISTRICT COURT

2             DISTRICT OF MASSACHUSETTS

3    - - - - - - - - - - - - - - - - - x

4    In re:

5    JEAN BATTY; EDWARD RUSSO; MARY
     LEARNING; KEN TRUDELL; MATT WOLF;
6    PAUL P. BARNETT; CRAIG VACCA; DAVID
     GOLDMAN; JANELE GOLDMAN; and
7    COMMONWEALTH SECOND AMENDMENT, INC.

8              Plaintiffs        Civil Action
       v.                        No. 1:14-cv-10238
9

10   KEN ALBERTELLI, IN HIS OFFICIAL
     CAPACITY AS CHIEF OF THE WINCHESTER
11   POLICE DEPARTMENT; RICHARD C. GRIMES,
     IN HIS OFFICIAL CAPACITY AS CHIEF
12   OF THE WEYMOUTH POLICE DEPARTMENT;
     WILLIAM TAYLOR, IN HIS OFFICIAL CAPACITY
13   AS SUPERINTENDENT OF THE LOWELL POLICE
     DEPARTMENT; AND DAVID A. PROVENCHER, IN
14   HIS OFFICIAL CAPACITY AS THE CHIEF OF THE
     NEW BEDFORD POLICE DEPARTMENT

15             Defendants
16   - - - - - - - - - - - - - - - - - x

17           DEPOSITION of JEAN Z. BATTY
             Wednesday, May 11, 2016
18                 10:05 a.m.
             Welch & Donohoe, LLP
19             655 Summer Street
             Boston, Massachusetts
20        Michelle Keegan, Court Reporter

21

22      WILLIAMS & ASSOCIATES COURT REPORTERS
          Professional Court Reporters
23             177 Beach Avenue
          Hull, Massachusetts 02045
24             781-760-6619

**EXHIBIT**

DO 2

1    Q.   And you don't really have any kind of --

2    haven't been using a gun.

3         What do you think these -- why do you

4    think these restrictions limit you at all?

5    A.   Because by now I would have purchased a

6    gun, and I would have joined the Scituate Rod and

7    Gun Club to target practice for personal

8    protection purposes.  At this point, there's no

9    reason for me to do this because I can't carry a

10   gun.

11   Q.   You can protect yourself in your home

12   though.  Is that correct?

13   A.   That's not where I'm worried.  It's not in

14   my home.

15   Q.   And why are you worried about your

16   personal protection?

17   A.   Terrorism.

18   Q.   And what's your experience with terrorism

19   or terrorism events?

20   A.   My husband was at the Pentagon when it was

21   hit.  He was responding to the Pentagon as a

22   medical officer.  He responded to that.

23        We also lived in Washington, D.C., at the

24   time of the sniper.  I remember distinctly picking

1    up my children from preschool and having them lie

2    down in the back of the car because we were so

3    afraid at that time.

4              I was in North Station at the time of the

5    Boston bombing with my child who uses a wheelchair

6    to get around.  It's very hard to flee from

7    terrorism when you're in a wheelchair.

8        Q.   And so your initial contact with terrorist

9    activity was 9/11/2001?

10       A.   Uh-hmm.

11       Q.   Why did you wait until 2013 to make out an

12   application?

13       A.   Because it's been increasing.

14       Q.   Just terrorism around the world.  Is that

15   correct?

16       A.   Uh-hmm.

17       Q.   And in your application, you indicated

18   that you were seeking the license for personal

19   protection and self-defense?

20       A.   Uh-hmm.

21       Q.   But you want personal protection and

22   self-defense 24 hours a day outside the home as

23   well as inside the home.  Is that correct?

24       A.   I want it when I feel I'm in an at-risk

1      Q.   And at some point you were -- how did you

2   find out about the committee on the second

3   amendment?

4           MR. JENSEN:   The Commonwealth Second

5   Amendment, I think you mean.

6      Q.   Commonwealth Second Amendment.  I'm sorry.

7      A.   I had to talk to my husband about it.  I

8   was really upset because I couldn't figure out why

9   I wouldn't be allowed to have a license to carry.

10     Q.   A full license?

11     A.   Yeah.

12     Q.   Unrestricted?

13     A.   Yes.

14     Q.   Okay.  And did you join the Commonwealth

15  Second Amendment?

16     A.   No.

17     Q.   Does your husband belong to that group?

18     A.   I don't know.

19     Q.   And you are participating in this suit and

20  supported by the second amendment.  Is that

21  correct?

22     A.   Yes.

23     Q.   And you don't own a gun?

24     A.   Uh-hmm.

1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3          * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
           In re:
4

           JEAN BATTY; EDWARD RUSSO; MARY
5          LEARNING; KEN TRUDELL; MATT WOLF;
           PAUL P. BARNETT; CRAIG VACCA; DAVID
6          GOLDMAN; JANELE GOLDMAN; and
           COMMONWEALTH SECOND AMENDMENT, INC.,
7

8                         Plaintiffs,
                                             Civil Action
           vs.                               No. 1:15-cv-10238
9

           KEN ALBERTELLI, IN HIS OFFICIAL
10         CAPACITY AS CHIEF OF THE WINCHESTER
           POLICE DEPARTMENT; RICHARD C. GRIMES,
11         IN HIS OFFICIAL CAPACITY AS CHIEF
           OF THE WEYMOUTH POLICE DEPARTMENT;
12         WILLIAM TAYLOR, IN HIS OFFICIAL CAPACITY
           AS SUPERINTENDENT OF THE LOWELL POLICE
13         DEPARTMENT; AND DAVID A. PROVENCHER, IN
           HIS OFFICIAL CAPACITY AS THE CHIEF OF THE
14         NEW BEDFORD POLICE DEPARTMENT,

15                        Defendants.
           * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
16

17                    DEPOSITION of EDWARD RUSSO
                       Thursday, June 2, 2016
18                           2:12 p.m.
                        Welch & Donohoe, LLP
19                        655 Summer Street
                     Boston, Massachusetts 02210
20

21
                  Kimberley J. Bouzan, Court Reporter
22         WILLIAMS & ASSOCIATES COURT REPORTERS
                    Professional Court Reporters
23                     177 Beach Avenue
                   Hull, Massachusetts 02045
24                       781-760-6619

EXHIBIT

DO 3

1    A.    Yes.

2    Q.    Okay.  And if you'll notice on page 3,

3    reason(s) for requesting the license was, "All

4    lawful purposes and personal protection"; is that

5    correct?

6    A.    Yes.

7    Q.    And that reason hasn't changed; has it?

8    A.    No, sir.

9    Q.    Okay.  And tell me when you received the

10   first license?

11   A.    I believe it was 6/5/2013.

12   Q.    Okay.  And that was a license without

13   restriction; is that correct?

14   A.    Exactly.

15   Q.    Okay.  And do you own a firearm?

16   A.    No, sir.

17   Q.    Have you ever owned a firearm?

18   A.    No, sir.

19   Q.    Okay.  And why did you make application

20   for -- was there any particular event or

21   anything --

22   A.    No; nothing.  Just no reason whatsoever.

23   I wasn't -- nothing never happened to me.

24   Q.    And subsequent to receiving that

1      A.   Yes.   No, they got in touch with me.

2      Q.   When did they do that?

3      A.   I can't tell you.   I don't know.   I have

4  no idea or -- I have no idea except for the fact

5  that I turned in the license on February 20th.

6  I'm just guessing it was sometime in May -- April

7  or May they got in touch with me.   In 2015.

8      Q.   Okay.   You had previously testified that

9  you went to the police station in January.

10     A.   No, I didn't say that.

11     Q.   I thought you said you picked up the --

12     A.   I picked up the license.   I picked up my

13  new license.   I'm sorry.

14     Q.   In January?

15     A.   I picked up the new license and it was

16  probably the end of February.   It was probably --

17  February 6th was the day, last day I could pick

18  it up.   And I'm going to say it was sometime in

19  February that I picked up that new license.

20     Q.   Okay.   And it was shortly after that that

21  you were in touch with Commonwealth Second

22  Amendment?

23     A.   Well, they got in touch with me probably

24  two or three months after that.

```
1        Q.   Okay.   And you authorized the suit; is

2   that correct?

3        A.   Yes.

4            MR. MURRAY:   Actually, I have nothing

5   further.   Do you have any questions?

6            MR. JENSEN:   No.

7            (Whereupon the deposition was concluded

8   at 2:28 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```