**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JEAN BATTY; EDWARD RUSSO; MATT WOLF; PAUL P. BARNETT; CRAIG VACCA; and COMMONWEALTH SECOND AMENDMENT, INC.,

Plaintiffs,

-against-

KEN ALBERTELLI, in his official Capacity as Chief of the Winchester Police Department; and WILLIAM TAYLOR, in his Official Capacity as Superintendent of the Lowell Police Department,

Defendants.

CIVIL ACTION NO. 1:15-cv-10238-FDS

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

(I) THE STATUTE DOES NOT REQUIRE A "UNIQUE" OR "SPECIFIC" REASON FOR AN UNRESTRICTED LTC ..... 5

(II) NEITHER THE SUPREME COURT NOR THE OTHER CITED COURTS HAVE "LIMITED" THE SECOND AMENDMENT TO THE HOME ..... 7

(III) DEFENDANT'S RESTRICTION POLICY DOES NOT "FIT" THE GENERALIZED PUBLIC SAFETY CONCERNS DEFENDANT CITES ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

### CASES

Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977) .......... 5

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) .......... 2

Comfort v. Lynn Sch. Comm., 150 F. Supp. 2d 285 (D. Mass. 2001) .......... 2

District of Columbia v. Heller, 554 U.S. 570 (2008) .......... 7, 9

Hightower v. Boston, 693 F.3d 61 (1st Cir. 2012) .......... 8

Kunz v. New York, 340 U.S. 290 (1951) .......... 10

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .......... 5

McDonald v. Chicago, 561 U.S. 742 (2010) .......... 7

Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012) .......... 3

O'Shea v. Littleton, 414 U.S. 488 (1974) .......... 2

Peruta v. County of San Diego, no. 10-56971, 2016 U.S. App. LEXIS 10436 (9th Cir. Jun. 9, 2016) (en banc) .......... 8-9

Pineiro v. Gemme, 937 F. Supp. 2d 161 (D. Mass. 2013) .......... 6

Powell v. Tompkins, 783 F.3d 332 (1st Cir. 2015) .......... 8

Project B.A.S.I.C. v. O'Rourke, 907 F.2d 1242 (1st Cir. 1990) .......... 5

Ruggiero v. Police Comm'r of Boston, 18 Mass. App. Ct. 256, 464 N.E.2d 104 (1984) .......... 6

Shuttlesworth v. Birmingham, 394 U.S. 147 (1969) .......... 10

Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd., 502 U.S. 105 (1991) .......... 10

State v. Blocker, 630 P.2d 824, 291 Or. 255 (1981) .......... 8

State v. Kessler, 614 P.2d 94, 289 Or. 359 (1980) .......... 7

Tilley v. TJX Cos., 345 F.3d 34 (1st Cir. 2003) .......... 5

United States v. Carriger, 592 F.2d 312 (6th Cir. 1979) .......... 2

United States v. Chester, 628 F.3d 673 (4th Cir. 2010) .......... 9

United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010) .......... 9

United States v. Rene E., 583 F.3d 8 (1st Cir. 2009) .......... 8

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (en banc) .......... 9

### STATUTES

1998 Mass. Acts ch. 180 .......... 6

2014 Mass. Acts ch. 284 .......... 6

M.G.L. c. 140, § 131 .......... 6

**RULES**

Fed. R. Evid. 401 .......... 2

Fed. R. Evid. 402 .......... 3

Defendant's restrictions prevent the Plaintiffs from exercising their Second Amendment right to keep and bear arms for its core purpose—protection of self and family—anywhere but in their homes. Under Defendant's policy, no one can exercise this right unless they provide a "reason" that Defendant considers adequate—and aside from the generalized overview Defendant provided at his deposition, Defendant's criteria for reaching this decision is a secret. The right to bear arms depends on Defendant's discretion, and nothing other than Defendant himself serves to constrain that discretion.

Defendant does not dispute these basic facts, nor does Defendant dispute that:

- In January-February 2015, Defendant imposed "Target & Hunting" restrictions on the LTC's he had previously issued to Plaintiffs Jean Batty and Edward Russo.
- Those "Target & Hunting" restrictions preclude self-defense anywhere but the home.
- From the time that Defendant imposed the restrictions to the present, there has been no other license that the Plaintiffs could have applied for.

Nor does Defendant dispute the basic parameters of his policy:

- Defendant imposes restrictions on all LTC's unless he concludes that an applicant has demonstrated a "reason to fear" that he considers adequate.
- There is no written policy that governs Defendant's determination of whether or not a person has provided an adequate "reason to fear," and Defendant will not provide applicants with advice about what would or would not be considered adequate.
- Defendant might find that a person has an adequate "reason to fear" if they were previously a victim of a crime, if they are involved in certain occupations, or for other reasons that remain undisclosed.
- Under state law, Defendant's decision will stand unless it is proven to be arbitrary and capricious.
- As a result, fully 89.3% of the non-renewal LTC's that Defendant has issued over the past 2½ years have carried restrictions that preclude self-defense outside the home. Excluding law enforcement officers, the rate rises to 90.7%.

Defendant does, however, challenge the admissibility of 18 of the 52 facts that Plaintiffs identified as undisputed in their Statement of Undisputed Facts (Doc. No. 57). See Deft. Opp.

Br. pp. 3-5. Notably, Defendant never disputes the accuracy of these proffered facts, instead relying on arguments about their form and relevance. But contrary to Defendant's claims, the facts are relevant, and Defendant has shown no basis for refusing to consider them as evidence. Plaintiffs address these objections in turn.

Objections to Facts Pertaining to Defendant's Policy. Facts 25-28 and 36 all concern the substantive parameters of Defendant's written policy: (1) Defendant first adopted the policy in February 2016 (no. 25); (2) the policy describes three types of restrictions (nos. 26-28); and, (3) aside from reciting Defendant's authority to impose restrictions and stating that applicants must provide "a detailed description of the purpose," the policy provides no substantive guidance regarding when or why Defendant will choose to impose a restriction (no. 36). Defendant claims that his current policy "is not material" because it was first published in February 2016 and is "outside of the relevant period for consideration in this case." See, e.g., Deft. Opp. Br. p. 4.

But Defendant's current policy is directly relevant because Plaintiffs seek the prospective relief of a declaratory judgment and an injunction. This relief serves to redress the ongoing and future injuries that result from the fact that Defendant is keeping his policy in place. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983); see also O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); Comfort v. Lynn Sch. Comm., 150 F. Supp. 2d 285, 295 (D. Mass. 2001) (no threat of imminent injury because plaintiff schoolchildren would keep their desired school assignments under the school plan in place). Defendant's policy is thus "relevant"[1] because it is a "fact . . . of consequence in determining the action." Fed. R. Evid. 401.

[1] The Federal Rules of Evidence do not use a "materiality" standard, but instead look to whether or not evidence is "relevant." See United States v. Carriger, 592 F.2d 312, 315 (6th Cir. 1979).

Objections to the Letter that Dr. Batty Submitted. Facts 15-17 concern a letter that D. Scott Batty, MD submitted to Defendant on behalf of himself and his wife, Plaintiff Jean Batty, after Defendant had notified them in January 2015 that he was re-issuing their LTC's with restrictions. Dr. Batty provided specific reasons that he and Ms. Batty sought unrestricted LTC's, but Defendant refused to issue them LTC's that did not carry "Target & Hunting" restrictions. Again, Defendant does not dispute that these facts are accurate. Rather, Defendant claims that "[t]here is only one statement submitted by Plaintiff Batty under oath during the application process and to be considered by the court." But Defendant cites no authority to support this claim. In any event, the letter that Dr. Batty and Ms. Batty submitted is "relevant" because (among other things) it shows that: (1) Defendant's decision to impose the restrictions was final; (2) the submission of a detailed statement did not meet Defendant's requirements; and (3) the remaining considerations outlined in the letter likewise did not satisfy Defendant's requirements. All relevant evidence is presumptively admissible, see Fed. R. Evid. 402, and Defendant has provided no countervailing authority to support the objection.

Objection to Plaintiffs' Testimony About Additional Training. Both Plaintiffs have testified that they would complete reasonable additional training in order to obtain unrestricted LTC's (no. 21). Again, Defendant does not dispute the accuracy of this testimony, but instead asserts that the evidence is not "material." Deft. Opp. Br. p. 4 ¶ 21. And again, Defendant supplies no authority to support his argument. Plaintiffs' willingness to obtain further training is directly relevant because it shows that Defendant's refusal to issue them unrestricted LTC's traces to concerns *other* than the Plaintiffs' own competence or qualification. Cf. Moore v. Madigan, 702 F.3d 933, 940-41 (7th Cir. 2012) (distinguishing "sensibly requir[ing] that an applicant for a handgun permit establish his competence in handling firearms" from a prohibition

on carrying guns in public). Incredibly, Defendant's own dispositive brief emphasizes that (in Defendant's view) the Plaintiffs have insufficient experience because they have not been to target ranges enough and did not immediately purchase their own guns after obtaining LTC's. See Deft. Br. pp. 7-8. Defendant offers neither authority nor explanation for why the Plaintiffs' alleged lack of training would be relevant and admissible for purposes of Defendant's motion, but not for purposes of Plaintiffs' parallel motion.

Objection to Plaintiffs' Testimony About Their Desire for Unrestricted LTC's. Both Plaintiffs have testified that they "sought and continue to seek licenses that would allow them the option to carry handguns for personal protection while away from their homes" (no. 20). Defendant's objection is somewhat difficult to follow:

> The record indicates neither Plaintiff completed the application process. Neither declaration by the Plaintiffs support the statement in that it was clear from the declaration only that the Plaintiffs "desired" not "sought" and continue to seek the licenses.

Deft. Opp. Br. p. 3 at ¶ 20. However, Defendant points to no evidence that would indicate that the Plaintiffs have not "completed the application process." To the contrary, Defendant's own motion posits that each Plaintiff "applied for a license to carry" in March 2013, and that Defendant then "issued" LTC's to both in June 2013. See Deft. Br. pp. 6-7. Defendant offers no explanation of why he issued LTC's to the Plaintiffs if they never "completed the application process," nor does Defendant explain what else Plaintiffs would have needed to do. And as to Defendant's second point, there is no material distinction between "desiring" and "seeking" an unrestricted LTC, nor does Defendant point to any basis for finding such a distinction.

Objection to Facts Regarding Organizational Standing. Defendant objects to facts 45-52, which concern the organizational standing of Plaintiff Commonwealth Second Amendment, Inc., on the ground that these facts are not "material"—again without citing any authority to support

the argument. But these facts are relevant because a party invoking the relief of a federal court has an obligation to establish standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). That said, it is also true that the Court does not need to address this issue because it is clear that Plaintiffs Jean Batty and Edward Russo have standing. See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 263-64 & n.9 (1977); see also Tilley v. TJX Cos., 345 F.3d 34, 36 (1st Cir. 2003); Project B.A.S.I.C. v. O'Rourke, 907 F.2d 1242, 1244 (1st Cir. 1990).

## ARGUMENT

### (I) THE STATUTE DOES NOT REQUIRE A "UNIQUE" OR "SPECIFIC" REASON FOR AN UNRESTRICTED LTC

Defendant claims that Plaintiffs did not "meet the statutory requirement in their applications by indicating any unique reason to distinguish their applications from the general public. . . ." Deft. Opp. Br. p. 6. This argument misses the mark for several reasons. First is the fact that Defendant *approved* the applications that the Plaintiffs submitted and issued them LTC's without restrictions. It was well over a year later that Defendant, acting on his own volition, decided to re-issue LTC's that carried restrictions. This was not in response to a request or application that either of the Plaintiffs submitted, making the substance of the applications the Plaintiffs had submitted almost two years prior irrelevant.

A second problem with Defendant's argument is that it ignores the reality that Plaintiff Jean Batty *did* attempt to provide additional, specific reasons after Defendant notified her of his decision, but Defendant did not consider her reasons adequate. There is no reason to think Plaintiff Edward Russo would have fared any better. Indeed, Defendant's letters to the Plaintiffs did not reference the reasons that Plaintiffs had provided, nor did it ask for additional reasons or indicate any willingness to consider them.

But the most basic problem with Defendant's argument is that Massachusetts law does not actually require applicants to provide specific and detailed reasons to obtain unrestricted LTC's, nor does it mandate that licensing authorities impose restrictions in the absence of such reasons. Rather, § 131(d) provides that a licensing authority cannot issue *any* LTC—restricted or not—unless "it appears that the applicant is not a prohibited person . . . and has good reason to fear injury to the applicant or the applicant's property or for any other reason, including the carrying of firearms for use in sport or target practice only. . . ." M.G.L. c. 140, § 131(d).[2] It is another subpart of § 131 that provides, separately, that LTC's are "subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper." Id. § 131(a); see also id. § 131(b) (same language as to "Class B" LTC's). Thus, the terms of the statute *allow* restrictions, but they do not *require* them.[3] And while the statute does require some sort of "good reason" to obtain any license, restricted or not, nothing in the statute requires a *further* reason for an unrestricted LTC. It is certainly true that a licensing authority "may" adopt a policy under which an "applicant [must] distinguish his or her own needs from those of the general public" in order to obtain an unrestricted LTC. See Pineiro v. Gemme, 937 F. Supp. 2d 161, 167 (D. Mass. 2013) (citing Ruggiero v. Police Comm'r of Boston, 18 Mass. App. Ct. 256, 261, 464 N.E.2d 104, 108 (1984)).[4] But this does not mean that a licensing authority *must* adopt this policy, or any other policy, or that an applicant must meet one of these policies as a requirement of the statute.

---

[2] The 2014 legislation changed the structure of this statute to make the issue of "suitability" a subset of whether a person is "prohibited." See 2014 Mass. Acts ch. 284, § 48. This change does not impact the case at bar.

[3] If the statute required restrictions, then the various police chiefs who have changed their restriction policies in this matter and in other related matters would not have been free to do so.

[4] The decision in Ruggiero focused on whether the requirement of a "proper purpose" implied "the power to limit any license granted under § 131 to a specified purpose," but this was based on a prior version of § 131 that did not expressly authorize the imposition of restrictions. See Ruggiero, 18 Mass. App. Ct. at 260, 464 N.E.2d at 107. In 1998 the General Court amended § 131 to expressly authorize "such restrictions . . . as the licensing authority deems proper." 1998 Mass. Acts ch. 180, § 41, sec. 131(a)-(b). Thus, because § 131 now expressly addresses the issue of restrictions, inferential reasoning based on other provisions of the statute is both unnecessary and inappropriate.

## (II) NEITHER THE SUPREME COURT NOR THE OTHER CITED COURTS HAVE "LIMITED" THE SECOND AMENDMENT TO THE HOME

The court decisions that Defendant cites do not "limit" the right to bear arms to the home. The Supreme Court did not limit the scope of is ruling in District of Columbia v. Heller, 554 U.S. 570 (2008), and it did not "differentiate[] between the fundamental right to possess a firearm inside one's home . . . and the carrying of a firearm on a public street or in public areas, due to the dangers posed to the public in the latter circumstances." See Deft. Opp. Br. p. 7 (citing Heller, 554 U.S. at 626-27). Rather, on the cited pages of the Heller decision the Court granted the plaintiff all of the relief he had requested—which did not include a request for a license to carry anywhere other than in his home. See Plf. Opp. Br. pp. 3-5. And nothing in the Court's discussion draws the danger-in-public-areas distinction that Defendant advocates. See Heller, 554 U.S. at 626-27. It is true that McDonald described Heller as having "held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense." McDonald v. Chicago, 561 U.S. 742, 790 (2010). But this statement was not intended to limit Heller's reach. Indeed, in other places the Court recognized that the "central holding in Heller" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, *most notably* for self-defense within the home." Id. at 780 (emphasis added).

Two decisions from the Oregon Supreme Court provide useful guidance on Heller's precedential sweep. First, in State v. Kessler, 614 P.2d 94, 289 Or. 359 (1980), the court relied on the "right to bear arms" codified in the Oregon constitution to invalidate a state law that prohibited the possession of billy clubs—as to a defendant who had possessed them in his home. See id. at 100, 289 Or. at 372 ("The defendant concedes that the legislature could prohibit carrying a club in a public place in a concealed manner, but the defendant maintains that the legislature cannot prohibit all persons from possessing a club in the home."). One year later, the

court rejected the argument that the right to arms it had previously recognized was limited to the home. See State v. Blocker, 630 P.2d 824, 827, 291 Or. 255, 261-62 (1981), overruled in part on other grounds State v. Christian, 307 P.3d 429, 354 Or. 22 (2013). The court explained that "[t]he text of the constitution is not so limited; the language is not qualified as to place except in the sense that it can have no effect beyond the geographical borders of this state." Id. at 825, 354 Or. at 259. The court's prior decision in Kessler had "started from the premise that under § 27 a person has a right to bear arms for defense of self" and "then moved from that general proposition to the more particular one that a person had the constitutional right to have a billy in his home for defense." Id. at 825-26, 354 Or. at 259. There, as here, the general principle recognized in the prior decision went beyond the specific facts presented.

The other decisions that Defendant cites (p. 8) also do not support Defendant's limited-to-the-home claim. Most pertinently, the Court of Appeals for the First Circuit did not so hold in either United States v. Rene E., 583 F.3d 8 (1st Cir. 2009), or Hightower v. Boston, 693 F.3d 61 (1st Cir. 2012). Rather, as the First Circuit recently observed, that court "has yet to weigh in on 'the scope of the Second Amendment as to carrying firearms outside the vicinity of the home without any reference to protection of the home.'" Powell v. Tompkins, 783 F.3d 332, 348 (1st Cir. 2015) (quoting Hightower, 693 F.3d at 72).[5] The Court of Appeals for the Ninth Circuit also made no such holding in Peruta v. County of San Diego, no. 10-56971, 2016 U.S. App. LEXIS 10436 (9th Cir. Jun. 9, 2016) (en banc). There, the en banc panel characterized the case as being about concealed firearms and ruled that the Second Amendment does not protect concealment "in any degree." Id. at *50. But the court expressly observed that it was "not reach[ing] the question whether the Second Amendment protects some ability to carry firearms in public, such

[5] It should be noted that this was a habeas corpus proceeding where the issue was whether the right to bear arms in public was "clearly established" at the time of a conviction. See generally Powell, 783 F.3d at 336.

as open carry." Id. at *18; see also id. at *19 ("The Second Amendment may or may not protect, to some degree, a right of a member of the general public to carry firearms in public.").

The Court of Appeals for the Seventh Circuit made no such holding in United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (en banc). Indeed, police arrested the criminal defendant in that case when he returned to his home with a shotgun after hunting. See id. at 653 n.16 (Sykes, J. dissenting). Indeed, the court's analysis would have been unnecessary if the Second Amendment had no application outside the home in the first place.

And finally, no such sweeping announcement is to be found in United States v. Chester, 628 F.3d 673 (4th Cir. 2010), or United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), either. Both of these criminal prosecutions concerned guns possessed in the home, making the question of the Second Amendment's application outside the home irrelevant. See Chester, 628 F.3d at 676-77 (guns found in search of home); Marzzarella, 614 F.3d at 87-88 (defendant sold gun from his home). While both decisions indicate that the need for self-defense is particularly pronounced in the home, see Chester, 628 F.3d at 677 ("most acute" (quoting Heller, 554 U.S. at 628)); Marzzarella, 614 F.3d at 92, this is a far cry from holding that the Second Amendment *only* applies inside the home. If anything, the statement that the need for defense is "*most* acute" at home recognizes that it is still present (*i.e.* acute to a lesser degree) outside the home.

### (III) DEFENDANT'S RESTRICTION POLICY DOES NOT "FIT" THE GENERALIZED PUBLIC SAFETY CONCERNS DEFENDANT CITES

Defendant invokes "the important goal of public safety" to justify his policy, but he does so without regard to whether there is any degree of "fit" between his policy and that goal. See Deft. Opp. Br. p. 9. Indeed, since Defendant is refusing to fully disclose his policy, it is somewhat unclear how he could make such a showing. In any event, the statement that "[t]he Massachusetts statutes are substantially related to that [public safety] goal in the approved

review process" does *nothing* to explain why Defendant's policy advances the goal of public safety, or does so in a manner that is more effective than other regulatory alternatives. For example, why would Defendant's approach of requiring a "reason to fear" that he deems acceptable do a better job of advancing the goal of public safety than an approach that focused on an applicant's objective qualification to carry a firearm? The only apparent "advantage" of Defendant's approach is that it limits the number of people who can exercise the right. And even if some sort of "reason to fear"-grounded policy were justified, what would justify the use of a semi-secret standard over one that was public? Again, the "advantage" that is apparent is that the secret standard is harder to satisfy, meaning that fewer people are able to exercise their right. But the government cannot justify a burden on a constitutional right with the circular approach of "tak[ing] the *effect* of the [burden] and posit[ing] that effect as the State's interest." Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd., 502 U.S. 105, 118 (1991) (emphasis added). And further, the Supreme Court "ha[s] consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places." Shuttlesworth v. Birmingham, 394 U.S. 147, 153 (1969) (quoting Kunz v. New York, 340 U.S. 290, 294 (1951)).

## CONCLUSION

The result of Defendant's restriction policy is the denial of the right to bear arms to over 89% of adults who apply for a license and are otherwise qualified to receive it, and Defendant has failed to justify this broad burden. The precise scope of the Second Amendment's protections may be somewhat unsettled, but this case does not present a controversy at the margins of this debate. Rather, Defendant's policy cannot be sustained so long as the right to keep and bear arms has *any* application outside the home.

Dated: August 9, 2016

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,

David D. Jensen, Esq.
Admitted *Pro Hac Vice*
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com

Patrick M. Groulx, Esq.
BBO No. 673394
Grolman LLP
321 Columbus Avenue
Boston, Massachusetts 02116
Tel: 617.859.8966
Fax: 617.859.8903
patrick@grolmanllp.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 9 August 2016.

/s/ David D. Jensen
David D. Jensen, Esq.